UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

**RECEIVED**

JAN 2 8 2021

**U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.**

Adrian Patterson )
      Petitioner, )
)
                     ) Case No. 2009-cr-47
vs. )              3:09CR00047
)              3:16-cv-02623
United States of America ) Chief Judge Crenshaw
      Respondent. )

## MOTION FOR REDUCTION OF SENTENCE
## PURSUANT TO TITLE 18 U.S.C. § 3582(c)(1)(A)

COMES NOW, movant/petitioner Adrian Patterson, pro se
respectfully request that this Honorable Court Grant a
Reduction of Sentence for Compassionate Release pursuant to:
Title 18 U.S.C. § 3582(c)(1)(A), as amended in the First Step
Act (FSA) See P.L. 115-391, 132, Stat. 5194, at Section 603
(December 21, 2018). In light of the COVID-19 Pandemic, medical
conditions if exposed to COVID-19 threat to prisoners, immediate
emergent cause, leads to an "extraordinary circumstance"
befitting a sentence reduction. Under the Authority of this
Honorable Court, petitioner humbly prays that this motion be
GRANTED.


### NATURE OF PROCEEDING

This motion is brought pursuant to 18 U.S.C. § 3582(c)(1)(A),
which allows that:

"The Court, upon motion of the Director of the Bureau of
Prisons, may reduce the term of imprisonment, after considering

-1-

the factors set forth in Section 3553(a) to the extent that
they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a
> reduction;"

A copy of the U.S. Penitentiary Wardens response is enclosed
following the Warden's denial of petitioner's Administrative
Remedy. Petitioner appealed but no further response to Administrative
Remedy were received from F.B.O.P. An emergent cause may be
deemed to exist in light of the Corona Virus.

> **United States v. Powell,** 94 Cr. 316, ECF No. 98
> (D.D.C. Mar. 28, 2020), waiving exhaustion under
> § 3582(c)(1)(A) where the Court found that
> "requiring defendant to first seek relief through
> the (BOP) administrative process would be futile.
> **Also see Matter of Extradition of Toledo Manrique,**
> No. 19-MJ-71-055, 2020 WL 1307109, at ✭1 (N.D.
> Cal Mar. 19, 2020)(refusing to delay consideration
> of release to await evidence of an outbreak in the
> jail because that  "may be too late").

F.B.O.P. Policy Statement, #5050.50 and Title 28 C.F.R. 71.
61(a) provided guidance for the administrative remedy and
compassionate release requested.

## DISCUSSION

The petitioner is susceptible to a sentence reduction and
should be released accordingly.

As such, the Court is directed to Section 1B1.13 of the
guidelines by operation of 18 U.S.C. § 3582, which provides
that a defendant can establish an extraordinary and compelling
reason if he is "suffering from a serious or medical condition...
that substantially diminishes the ability of the defendant to

-2-

provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13, cmt.n. 1(A)(ii).

Petitioner asserts that he suffers from Asthma and Hypertension. According to CDC, the following medical illnesses if exposed to COVID-19 would cause him major complications such as (1) lung disease; (2) heart problems; (3) disability; (4) damage to kidneys; (5) ketacidosis; (6) hyperglycemia; (7) hypoglycemia; (8) shortness of breath, difficulty breathing; (9) stroke; (10) heart attack and eventually causing death. Numerous Courts have held release particularly is justified when the inmate suffers from preexisting health conditions that increase the likelihood of a lethal COVID-19 case. Moderate to severe asthma and hypertension are two such conditions. **United States v. Gorai,** No. 218CR220JCMCWH, 2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020) ("The court finds that defendant's asthma falls squarely within the ambit of preexisting conditions that the [Centers for Disease Control and Prevention (CDC) have] unambiguously explained place him at a greater risk of COVID-19."); See also **United States v. Park,** No. 16-CR-473 (RA), 2020 WL 1970603, at *3 (S.D.N.Y. Apr. 24 2020) (noting that according to the CDC, "people with ailments that cause trouble breathing particularly asthma,... are at a significantly higher risk;); **United States v. Colvin,** No. 3:19 CR179 (JBA), 2020 WL 1613943, at *3 (D. Conn. Apr. 2, 2020).

Petitioner claims that BOP recognizes that he has chronic asthma and hypertension. Prison physicians have consistently

provided him with requisite medications for it. Mr. Patterson's combination of risk factors places him at "extraordinary risk of severe illness and death from COVID-19. **United States v. Anderson,** No. 15-Cr-30015, 2020 WL 2521513, at * 5 (C.D. Ill. May 18, 2020)(Defendant suffers from hypertension, a condition that increases the serious risks that COVID-19 presents for Defendant.")

Petitioner asserts that his medical condition makes it impossible for him to provide "social distancing" and other prophylactic measures in a prison environment. Patterson is currently incarcerated at U.S.P. Terre Haute which is a quarantine hub for the North Central Region and has over half of the population infected with the COVID-19 with 9 deaths related to COVID-19. Correctional officers are required to wear their face mask during their entire shifts, but only wears them when the Executive Staff makes their routine rounds. There is no hand sanitizer and it's a shortage on cleaning supplies. The cramped prison conditions and limited protective equipment at U.S.P. Terre Haute are less than ideal during the COVID-19 Pandemic. **United States v. Rodriguez,** No. 2:03-CR-271-AB DKT. No. 135 (E.D. P.A. Apr. 1, 2020) (Granting release after finding risk factors for COVID-19 constituting extraordinary and compelling reason and noting that prisons are "tinderboxes for infectious disease").

Petitioner asserts in light of the COVID-19, an emergent need to depopulate confined overfull prisons with his medical

-4-

programs which Patterson has completed have been demonstrated to
significantly reduce the risk of return based upon any recidivist
behavior and conduct.

Moreover, petitioner has extensive family consisting of 4 kids,
2 boys and 2 girls, 3 sisters, 1 brother, 1 unlce, and 3 aunts and
an host of nieces, nephews and cousins who all support his
release and is planning for his release from prison. If released
from prison, Patterson would reside with his sister Katie Allen
at 2868 Andersonville Dr. Clarksville, TN. 37082 and would work
for Bris Stone Metalfa a Tire Plant.

In addition to the compelling and extraordinary circumstances
in Patterson's situation, the Supreme Court said in Pepper,
supra, consideration of post-sentence rehabilitation evidence is
in fact relevant to several of the 18 U.S.C. § 3553(a) factors
and could support a downward variance. As petitioner was
originally indicted with a single count of consipiracy to
distribute cocaine, a violation of 21 U.S.C. § 841. On September
21, 2011, the US Attorney obtained a superseding Grand Jury
indictment charging Petitioner with four additional counts for
the contraband and handgun allegedly found during the 2009 West
Court bust. (Case No. 2009-cr-47, ECF 192). The Court severed
Counts 2-5 from Count 1 but the West Court evidence was still
admissible at the Count 1 trial. (Case No. 2009-cr-47, ECF 241,
Order, at 3). On February 7, 2012, the Government offered
Mr. Patterson a plea deal to settle the entire case, including
Counts 2-5, in exchange for a sentence of 17 years. Patterson

-6-

rejected the offer because he and his attorney Mr. Strianse believed that the severance would result in automatic exclusion at trial.

During the trial, the court admitted a number of exhibits from the West Court trash pulls and bust, over petitioner's objection. Patterson was later found guilty and the Court sentenced him to "Life" as required by statute. Petitioner has a pending § 2255 motion with the Court arguing had Mr. Patterson known he would have been exposed to Counts 2-5 together with Count 1, he would have probably accepted the governments plea offer.

Furthermore, Mr. Patterson was 851 due to his prior felonies which were all minor. His prior felony convictions could no longer qualify as serious drug felonies because of the laws in Tennessee. Had Mr. Patterson been sentenced today he would only be able to recieve a maximum sentence of 15 years under the First Step Act (FSA) and not the life sentence that is now 25 years. Under these extraordinary circumstances, releasing Patterson early would not materially undermine the goals of just punishment and general deterrence, particularly when balanced against the significant risk to Patterson if he were infected.

Petitioner agrees that the "nature and circumstances" that he was convicted for are serious, § 3553(a)(1), but the Court should assess him as a whole person. **Koon,** 518 U.S. 81, 135 led 2d 392, 116 S.Ct. 2035 June 13, 1996. Petitioner has already illustrated his behavior as a rehabilitated person and these

-7-

condition. Petitioner's current and future potential, are fitting for the sentence reduction pursuant to Compassionate Release.

More importantly, the Court is in no way constrained as to what information it may rely on in determining a new sentence. See 18 U.S.C. § 3661. Also see **Pepper v. United States,**_____ U.S._____, 131 S.Ct. 1229 (2011).

Herein, petitioner is 45 years of age and has been incarcerated for 12 years and has successfully completed treatment and rehabilatative programs. Likewise, Patterson has voluntarily enrolled in and completed several hours of Adult Continuing Education (ACE) courses in the BOP, while enrolling in the Life Connections Program, the Bureau's most extensive and awarded program. It is an eighteen (18) month faith-based program specializing in spirituality and behavior modification. Patterson has completed over 1000 hours of the program and has completed courses in Comfort Zone Retreat, Building Blocks to a Healthy Community, Preparing for the Journey, Conflict Management, Obligation to Right the Wrong, Religious Tolerance, Managing Emotions, Following your Moral Compass, Family Life Connections, Personal Goal Setting, Drug Abuse Education, Inside/ Out Dads, Tackling Tactics, Anger Management, Victim Impact, Infectious Disease Prevention Seminar, Money Smart, Parenting Class, completed over 500 hours of Community Service for special needs children, Mock Job Fair and Resume Re-entry course to prepare me to enter back into society. Parenthetically, the

-5-

factors should suggest to this Honorable Court the characteristics
of Patterson today are not as they were at sentencing. Binding
precedent establishes that the § 3582(c) decision applies to the
person that Patterson is today and this Honorable Court should
consider his post-offense developments under § 3553(a), as these
provide "the most up-to-date picture" of his history and
characteristics.  The most up-to-date- picture of Patterson is
his change. He is rehabilitated and ready to be a productive
citizen in society.

Petitioner claims the "need for the sentence imposed" also
appears weaker after over one decade of incarceration. § 3553(a)(2).
Patterson has served 12 years in prison. The nature of Patterson's
current behavior in prison, suggest incarceration is not
necessary "to protect the public from further crimes of the
defendant". § 3553(a)(2)(c).

Meanwhile, Patterson's use of prison programming and employ-
ment suggest an actual vocation - outside of prison - would
best " provide the defendant with needed educational or vocational
training." § 3553(a)(2)(D).

Petitioner asserts nor is incarceration the only "kind []
of sentence available." § 3553(a)(3). Non-custodial sentences
also curtail "prized liberty interests" and "the defendant always
face the harsh consequences that await if he violates the
conditions" attached to such a sentence. **United States v. Gall,**
U.S. 38, 51, 128 S.Ct. 586, 169 L.ed 2d 445 (2007).

Case 3:09-cr-00047   Document 574   Filed 01/28/21   Page 8 of 17 PageID #: 6624

Furthermore, petitioner asserts that he has satisfied the minimum sentence for his offense, had he not been § 851 or had he been sentenced today under the First Step Act (FSA) should mean that his release will not create a drastic sentencing disparity with defendants "who have been found guilty of similiar conduct." § 3553(a)(6). Petitioner humbly believes that had the Court known his sentence would involve incarceration during a global pandemic in 2020, that is particularly dangerous in prisons for those with Patterson's medical history, it would have been well within it's discretion to resentence him to time served. Petitioner has served 12 years in prison which would not undermine the sentencing factors.

Because the petitioner has identified an extraordinary and compelling circumstance and has clearly availed himself of all available post-sentence rehabilitation programs offered in BOP, it is respectfully submitted that a reduction of the term of imprisonment for Compassionate Release pursuant to Title 18 U.S.C. § 3582(c)(1)(A) is indicated.

## CONCLUSION

Petitioner, Adrain Patterson, pro se, prays that this Honorable Court grants this motion; together with such other and further relief as the Court may deem just and proper.

-RESPECTFULLY SUBMITTED-

Dated: January 24, 2020

Adrain Patterson
Adrain Patterson

-9-

# CERTIFICATE OF SERVICE

I, Adrain Patterson, hereby certify that I mailed out this Motion For Compassionate Release pursuant to Title 18 U.S.C. 3582(c)(1)(A) through U.S. postal service from U.S.P. Terre Haute, Indiana to the Clerk of the Court for the Middle District of Tennessee on the _26_ day of _Janu c_____, 2021.

-Respectfully Submitted-

_Adrain Patterson_

Adrain Patterson
U.S.P. Terre Haute
P.O. Box 33
Terre Haute, IN 47808



**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Complex*
*Terre Haute, Indiana*

---

| ☒ Institution | ☐ Region | ☐ Central |
|---|---|---|
| B/C Unit 21-225 | | |

# Receipt of
# Administrative Remedy

| Inmate Name: | PATTERSON, ADRIAN DEWAYNE | Reg. No.: | 15851-075 |
|---|---|---|---|
| Administrative Remedy No.: | 1043538-F1 | | |

Received on this _5th_ day of _October_, 2020.

_OBA  Case Manager_
Signature/Title of Staff

If Administrative Remedy is allowed to be resubmitted, it is due to a Unit Team staff member by _____, 2020.

Edits received by Unit Team on this _____ day of _____, 2020.

_____
Signature/Title of Staff

## Inmate Copy

# REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Adrian Patterson | 15851-075 | C1 | USP Terre Haute |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST** What the Warden cited under section 18 U.S.C. §§3582(c)(1)(A) and 4205(g) in his response to my request for compassionate release is inaccurate and inappropriate. The First Step Act modified 18 U.S.C. §3582 (c)(1)(A) in 2018. See P.L. 115-391, 132 Stat. at 603 (Dec. 21, 2018). Section 603 of the First Step Act changed the process by which §3582(c)(1)(A) compassionate release occurs: instead of depending upon BOP Director's determination on extraordinary and compelling reasons and move for release, a Court can now resentence "upon motion of the Defendant", after the inmate has exhausted administrative remedies with the BOP or after 30 days from the receipt of the inmate's request for compassionate release with the Warden of the Defendant's facility, whichever comes first. Thus, under the First Step Act, a Court may now consider the Defendant's own motion to be resentenced without waiting for it to be made by the BOP. Furthermore, Courts are now authorized to consider a Defendant's motion, even one which the BOP opposes and order resentencing if the Court finds that extraordinary and compelling reasons warrant a reduction and such reduction is consistent with section 3553(a) factors. A.G. Bill Barr said, "With the changes made to the compassionate release statute by the First Step Act, Courts need not wait on a motion from the BOP's Director to reduce a prisoner's sentence under 18 U.S.C. §3582(c)(1)(A)(i) if extraordinary and compelling reasons exist." Importantly, the reasons that can justify resentencing need not involve terminal illness or dependant care of minor children. Similarly, Attorney General Barr stated the following in a directive to federal prosecutors across the country: "You should now consider the medical risk associated with individuals being remanded into federal custody during the covid-19 pandemic. Even the extensive precautions we are currently taking each time a new person is added ...

| | |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**CONTINUATION ON ATTACHMENT....**

**Part B– RESPONSE**

RECEIVED

AUG 28 2020

Administrative Remedy Clerk
FCC Terre Haute, IN

| | |
|---|---|
| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**

CASE NUMBER: _1043538-F1_

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

| | | | |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

Case 3:09-cr-00047   Document 574   Filed 01/28/21   Page 12 of 17 PageID #: 6628

| | |
|---|---|
| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) |

PRINTED ON RECYCLED PAPER

USP LVN

BP–229(13)
APRIL 1982

... to a jail it presents atleast some risk to the personnel who operate that facility and to the people incarcer-ated therein." Https://www.justice.gov/file/1266901/download On April 3, 2020, A.G. Bill Barr directed the BOP to review all inmates' records. https://www.politico.com/f/?id=0000171-4255-d6b1-c6d51b810000 "We have to move with dispatch in using come confinement where appropriate to move vulnerable inmates out of these institutions." Under previous law, federal prisoners were only eligable for home confinement after they completed 90% of their sentence. However, the new legislation allows for earlier release, if the A.G. formally declares an emergency, which Attorney General Barr has done months ago. "The CARES Act now authorizes me to expand the cohort of inmates who can be consi-dered for home release upon my finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons," Barr wrote, "I hereby make the finding and direct that ... you give priority in implementing these new standards to the most vulnerable inmates at the most affected facilities." Mr. Patterson has illnesses that more than qualifies him for consideration under A.G. Barr's and the CDC's recommendation for consideration. A.G. Barr and the CDC said, "... people with chronic lung disease or moderate to severe asthma, people who have se-rious heart conditions, compromised immune systems ... obesity." Clearly asthma, hypertension and obesity qualifies due to the fact that it's a respiratory disease that causes shortness of breath. Thus, COVID-19 attacks the lungs causing a person such as Mr. Patterson to require the use of an inhaler due to the use of the inhaler the chemicals that are contained therein causes the immunse system to weaken. To identify an extraordinary and compelling circum-stance that could not reasonably have been forseen by the Court at the time of sentencing Furthermore, the COVID-19 pandemic is such a situation that meets this required criteria. Speaking of which, no Judge, inmate, or citizen in any country around the world would have anticipated as well as forseen that such a deadly virus held in a laborat-ory in China would be unleashed, escape that laboratory or make an extraordinary leap from bats to humans, whiche-ver story you choose to believe, to spead to swiftly around the world, ravaging countries killing millions of peo-ple, devastating economies around the world leaving millions of families, homeless, hungry, destitute, and griev-ing from the loss of loved ones as well as friends. Could you be more specific about just what these extraordinary steps are when it's clear that you really refuse to mandate and enforce a policy requirement of your medical staff to wear protective gear (mask & Gloves) here at USP Terre Haute to protect the inamtes who are currently in your custody. It's painfully obvious that most BOP employees especially the medical staff here at USP Terre Haute are conservatives. As such, they are of the opinion that to require them to wear protective gear (mask & Gloves) does infringe upon their personal choice and freedoms. I'm a liberal; I don't share their views. Yes, I do agree that they have a right to freedom of choice and personal rights so long as it doesn't infringe upon other peoples right to safety and well being. If they make a concious decision not to protect themselves and it endangers themselves as well as others, than they should be held accountable to those who they have harmed by their actions. Consequently, they shouldn't be allowed to avoid prosecution criminally or civilly by hiding behind an immunity especially when they are repeatedly warned but choose to disregard countless warnings . Furthermore, I really shouldn't be subjec-ted to and have to live with the consequences of your staff member's decisions not to protect themselves because I'm incarcerated, especially when I clearly choose protection. In fact, this decision shouldn't be made for me or forced upon me because I'm incarcerated. A.G. Barr and the CDC said in their criteria recommendation "... condit-ions of confinement inside the Bureau of Prisons create an optimal environment for the transmission of contagious disease". People who work in the facility leave and return daily. There is support to justify this belief that has recently surfaced when a BOP staff, Officer ▮▮▮▮▮▮, here at USP Terre Haute tested positive for COVID-19 two weeks ago. However, this wasn't before she worked in C1 unit possibly exposing the entire unit to COVID-19. In fact, she also exposed a few fellow co-workers during that period, to COVID-19, We know for sure that she tested positive for COVID-19 and has since been quarantined. We aren't really sure of the exact identities of the other officers who were possibly exposed due to the fact that there are several staff members that had worked with her who have disappeared, that we're being told are on vacation. Furthermore, the staff here have been very dishonest and deceptive about the incident. They never informed us about what went on, instead they sent Ms. Skully and two officers to conduct cell-to-cell temperature checks on the inmates in C1 unit to ensure that none of them had a fe-ver. While conducting this temperature check, Ms. Skully received a call from Officer Rainbow telling her to switch to channel 3. Ms. Skully did what was asked of her. Officer R▮▮▮▮ came back over the radio saying that she might have come in contact with a family member that tested positive for COVID-19. Ms. Skully told her not to say another word because she was currently in C1 unit conducting temperature checks on C1 inmates. Consequently, they could hear what she was saying. Furthermore, the inmates in C1 are responsible for the increase in requests for compassionate releases being filed. It appears that the only extraordinary steps that you're taking to keep inmates safe is to ensure that we remain in the darkness as to when we might possibly have been exposed to COVID-19 by a staff member. What happened to the temperature checks on the staff that were supposed to be conducted prior to entering the faci-lity? Lastly, the potential possibility of being exposed to COVID-19 warrant early release. In fact, several Courts in various Districts share my view. In United States v. Powell, 94-CR-316 E.C.F. No. 98 (D.D. March 28, 2020) stated "waiving exhaustion under §3582(c)(a)(A) where the Court found that requiring a defendant to first seek relief thr-ough the BOP administrative process would be futile. Also United States v. Perez, No. 19-Mg-71055, 2020 WL 1307109 at 1 (N.D. Cal. Mar. 19, 2020) "refusing to delay consideration of release to await evid-ence of an outbreak in jail because that may be too late."

PATTERSON, Adrian
Reg. No. 15851-075
C1

---

## Inmate Request to Staff Member Response

This is in response to your Inmate Request to Staff regarding a Compassionate Release/Reduction in Sentence (RIS) based on the provisions for Extraordinary and Compelling Circumstances, due to the current pandemic, COVID-19.

After a review of your case, we will not be pursuing a request for compassionate release on your behalf. Among other review factors, Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§3582(c)(1)(A) and 4205(g), requires you to identify extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing. The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence. Additionally, a review of your most recent comprehensive medical summary reveals you are not suffering from a debilitating medical condition.

Accordingly, you are not appropriate for RIS at this time. If you are dissatisfied with this response, you may file an appeal pursuant to Program Statement 1330.18, Administrative Remedy Program, within 20 calendar days of the date of this response.

I trust this addresses your concerns.

8/11/20
_____
Date

_____
T. J. Watson, Complex Warden

## PART B - RESPONSE

This is in response to your Administrative Remedy receipted August 20, 2020, in which you allege staff erroneously denied your request for a reduction in sentence (RIS). Additionally, you suggest staff are not taking the necessary precautions to prevent the spread of the Covid-19 virus, fail to utilize protective gear and staff do not participate in daily temperature checks. For relief, you request staff submit a motion to the sentencing court on your behalf and request a (RIS) due to your current medical condition and the possibility of you contracting COVID-19.

A review of your request reveals, we will not be pursuing a request for compassionate release on your behalf. As indicated in the original response, Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§3582(c)(1)(A) and 4205(g), "an inmate is required to identify extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing." A review of your complaint indicates you do not have a condition that puts you at a higher risk for COVID-19 as defined by CDC guidelines. In addition, you have not presented evidence of an extraordinary or compelling reason that meets policy requirements to warrant an early release from your sentence.

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence.

Furthermore, all staff have been provided protective gear. There is no evidence suggesting staff are not utilizing protective gear. Additionally, all staff as well as any visitors to the complex are mandated to participate in daily temperature checks. Your claims that staff are not utilizing protective gear and fail to participate in daily temperature checks is without merit, and it is not warranted.

Therefore, this response to your Request for Administrative Remedy is denied.

If you are dissatisfied with this response, you may appeal to the Regional Director, North Central Regional Office, Federal Bureau of Prisons, 400 State Avenue, Suite 800, Kansas City, Kansas 66101. Your appeal must be received within 20 calendar days of the date of this response.

_____                    _____
Date                                       T. J. Watson, Complex Warden

Adrian Patterson #58851-075
USP Terre Haute
P.O. Box 33
Terre Haute IN 47808

INMATE
IDENTIFICATION
CONFIRMED

RECEIVED

JAN 2 8 2021

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

Chief District Judge
Waverly D. Crenshaw Jr.
Middle District of TN.
801 Broadway-Rm. 800
Nashville TN. 37203



FEDERAL CORRECTIONAL COMPLEX
4700 BUREAU ROAD SOUTH
TERRE HAUTE, IN 47802