# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ADRIAN PATTERSON, | ) |
| Petitioner, | ) |
| v. | ) Case No. 3:16-cv-02623 |
| | ) Chief Judge Crenshaw |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

## AFFIDAVIT OF PETER J. STRIANSE, ESQ.

Peter J. Strianse, Esq., being first duly sworn, deposes and states as follows:

1. I am a senior shareholder in the law firm of Tune, Entrekin & White, P.C., and my office address is 315 Deaderick Street, Suite 1700, Nashville, Tennessee 37238, telephone (615) 244-2770, fax (615) 244-2778, pstrianse@tewlawfirm.com. My Tennessee Bar Registration Number is 7293. I have been engaged in the private practice of law since 1990. Since 1990, I have focused my practice on criminal defense work, primarily federal trial and appellate work. I currently hold, and have held for many years, an "AV Preeminent Rating" in Martindale-Hubbell, and I am listed in its "Bar Register of Preeminent Lawyers" under the "Criminal Trial Practice Area" Section. I am the 2012 Nashville Bar Association *Jack Norman Award* recipient, awarded only periodically for excellence in the practice of criminal law.

2. I was admitted to practice before the State Bar of Tennessee on October 4, 1980 and the Federal Bar of the Middle District of Tennessee on September 9, 1988 and am currently in good standing and eligible to practice in said Courts.

3. I was admitted to practice in the Middle District of Florida in June 1984 where I served as an Assistant United States Attorney assigned to the Jacksonville Division from 1984 to

1987. I was an Assistant United States Attorney in the Middle District of Tennessee from 1987 to 1990 where I served as the Lead Attorney for the Organized Crime Drug Enforcement Task Force (OCDETF).

4. I entered my Notice of Appearance in Mr. Patterson's underlying Middle District of Tennessee criminal case on October 2, 2009. Undersigned counsel was retained by Mr. Patterson on September 24, 2009. Between September 24, 2009 and June 25, 2012 (after sentencing), a period of approximately 30 months, I visited Mr. Patterson in jail 87 times. I had, and still believe I have, a very good relationship with Mr. Patterson. I continued to visit Mr. Patterson at the Grayson County Jail in Leitchfield, Kentucky, after he was returned to this District to be prosecuted on several unresolved severed counts in the superseding indictment. In fact, on August 25, 2016, I filed a motion with the District Court asking that Mr. Patterson be permitted to attend his mother's funeral in Clarksville, Tennessee.

5. On February 25, 2009, Mr. Patterson was one of four defendants named in a one count Indictment filed in the Middle District of Tennessee. The Indictment charged Mr. Patterson and others with conspiracy to distribute and possess with intent to distribute more than five (5) kilograms of cocaine. On March 31, 2010, I filed a Motion to Suppress the Fruits of the Search of 2211 Ladd Drive, Clarksville, Tennessee, with a supporting Memorandum of Law. On September 1, 2010, Senior District Judge John T. Nixon held a hearing on Mr. Patterson's Motion to Suppress and directed the parties to file post-hearing briefs. Consistent with the Court's Order, I filed Proposed Findings of Fact and Conclusions of Law on October 7, 2010. On March 30, 2011, in consultation with Mr. Patterson, I filed Supplemental Findings of Fact and Conclusions of Law. The district court denied Mr. Patterson's Motion to Suppress on June 2, 2011. On September 21, 2011, a Superseding Indictment was returned by the grand jury. The

2

Superseding Indictment charged Mr. Patterson and others with conspiring to distribute and possess with the intent to distribute five (5) kilograms or more of cocaine (Count 1, 21 U.S.C. § 841(a)(1)), leasing, renting using and maintaining 1869 West Court, Clarksville, Tennessee, for the purpose of unlawfully manufacturing controlled substances (Count Two, 21 U.S.C. § 856 (a)(1), possession with the intent to distribute 28 grams of cocaine base and a quantity of marijuana on January 29, 2009 (Count Three, 21 U.S.C. § 841(a)(1)), and possession of a firearm in furtherance of a drug trafficking crime (Count Four, 18 U.S.C. § 924(c)(1)). In response to the superseding indictment, on January 11, 2012, I filed a Motion to Sever the newly added counts which related to the search of 1869 West Court at the time of Mr. Patterson's arrest. On January 16, 2012, in consultation with Mr. Patterson, I renewed his Motion to Suppress the Fruits of 2211 Ladd Drive with Incorporated Memorandum of Law. A hearing on Mr. Patterson's Motion to Sever Counts was conducted on February 1, 2012, and the trial court took the motion under advisement. On February 6, 2012, Judge Nixon granted Mr. Patterson's Motion to Sever Counts. On February 7, 2012, the government filed an *Information to Establish Prior Conviction* pursuant to 21 U.S.C. § 851, based on Mr. Patterson's two prior State felony drug convictions involving very small amounts of crack cocaine. The trial on severed Count One began before Judge Nixon and a jury on February 7, 2012 and concluded with a guilty verdict on Count One on February 23, 2012. Following trial, on March 13, 2012, I filed a Motion to Dismiss Severed Counts Two through Five of the Superseding Indictment (the so-called West Court counts) on Double Jeopardy and Collateral Estoppel Grounds with Incorporated Memorandum of Law. Judge Nixon denied the motion on March 19, 2012. I filed an Interlocutory Appeal to the United States Court of Appeals for the Sixth Circuit on March 19, 2012 challenging Judge Nixon's denial of the motion to dismiss the severed counts. On June 20, 2012, Judge Nixon sentenced

3

Mr. Patterson to a mandatory minimum term of life imprisonment followed by ten years of supervised release. On June 26, 2012, I timely filed a Notice of Appeal. At my request, Judge Nixon declared Mr. Patterson indigent for purposes of the notice of appeal filing fee and the transcript costs. I represented Mr. Patterson *pro bono* on direct appeal and through the U.S. Supreme Court petition for a *writ of certiorari*. On October 24, 2014, I filed a petition to rehear and for rehearing *en banc* in the United States Court of Appeals for the Sixth Circuit on behalf of Mr. Patterson. That petition was denied. I then took his case to the United States Supreme Court on a dismissal of a deliberating juror (apparently holding out for acquittal) issue that Supreme Court "watchers" believed the Court would likely take. Sidley Austin, a respected law firm in the District of Columbia, in conjunction with the Northwestern University School of Law Supreme Court Clinic, contacted me and asked to participate in preparing the petition for a *writ of certiorari*. Sidley Austin and the Northwestern University Clinic recognized the merits of the issue that I raised in the trial court as well as the Sixth Circuit and they entered an appearance in the case and worked with me on the petition for a *writ of certiorari*. Chief Judge Guy Cole, United States Court of Appeals for the Sixth Circuit, dissented and found the removal of the juror improper. "Because the record reflects a real possibility that the foreperson requested Juror 6's removal due to her view of the sufficiency of the government's evidence (*i.e.*, because she was a 'holdout' juror), her removal was improper. Accordingly, I would vacate defendants' convictions and remand the matter for a new trial." *United States v. Patterson*, Sixth Circuit Case Nos. 12-5305/5726/5741, at p.22.

6. Post-Conviction Counsel have identified the following areas where my representation of Mr. Patterson was deficient: (1) failure to adequately convey essential information about the government's guilty plea offer made on the morning of the trial; (2) failure

4

to exclude all evidence of the West Court search after Judge Nixon had granted the Defendant's motion to sever those counts; (3) my efforts to suppress the fruits of the search of Ladd Drive were pursued in a way contrary to Mr. Patterson's instructions; (4) although I carefully and completely preserved the removal of the deliberating juror in the district court and convinced the Chief Judge of the United States Court of Appeals for the Sixth Circuit that the trial court had committed reversible error, post-conviction counsel criticize me for not placing more emphasis on the fact that the dismissed juror is African-American; (5) that I failed to seek dismissal of Count One based on pre-indictment delay; and, (6) several other unbriefed complaints under a heading describing "miscellaneous" failures.

*The First Morning of Trial Plea Offer*

As noted above, I visited Mr. Patterson approximately 70 times before the first day of trial. Although he was disappointed with many of the trial court's rulings prior to trial, Mr. Patterson made no complaints to me about my trial preparation or our readiness for trial. Prior to the commencement of the first day of trial on February 7, 2012, I recall meeting with AUSA Sunny Koshy and he offered Mr. Patterson a binding Rule 11(c)(1)(C) plea agreement of 17 years. I immediately met with Mr. Patterson in the U.S. Marshals Service Lockup in the federal building to advise Mr. Patterson of the offer and discuss whether he wished to accept the offer or make a counter proposal. I reminded him that if the jury was to convict him of Count One of the superseding indictment that he would face a minimum mandatory sentence of life imprisonment based on his two prior felony drug convictions as alleged in the 21 U.S.C. § 851 enhancement *Notice*. My clear recollection is that Mr. Patterson rejected the government's last-minute offer and was adamant about moving forward with the trial. By that point and time, Mr. Patterson and I had engaged in 70 or more, in person, face-to-face, jail visits and communicated with each

5

other extremely well. We had a strong personal relationship and there was never any awkwardness about our interactions. Regarding the history of plea discussions with the United States in Mr. Patterson's case: (1) on January 27, 2010, Mr. Patterson authorized me to propose to the government that he would settle his case in exchange for a Fed. R. Crim. P. 11(c)(1)(C) binding plea agreement of ten (10) years. The government immediately, flatly rejected that proposal; (2) on July 8, 2011, the government advised me that it would consider a non-cooperation plea agreement which contemplated an agreed upon sentence of 25 years or so to 30 years and would not charge Mr. Patterson's sister, Katie, with money laundering – Mr. Patterson rejected that offer; (3) on September 11, 2011, Mr. Patterson authorized me to offer a Rule 11(c)(1)(C) plea agreement of 15 years – rejected by the government; and, (4) on February 5, 2012, Mr. Patterson authorized me to offer a Rule 11(a)(2) & 11(c)(1)(C) plea agreement of 20 years, reserving appellate review of the denial of the Ladd Drive motion to suppress and pretrial motions *in limine* – immediately rejected by the government.

> *Government Convinced District Court to Admit West Court Evidence After Severing Those Counts Over Counsel's Repeated, Continuing, and Adamant Objections*

Despite the fact that Counts Two, Three, Four, and Five of the Superseding Indictment (the West Court counts) against Mr. Patterson had been severed from his trial, the government, over the Defendant's objections, introduced evidence relating to those charges. I filed, and the district court granted, a motion to sever Counts Two through Five, relating to conduct which occurred at 1869 West Court in 2009, from Count One which charged the original drug conspiracy. Sensing the government's dissatisfaction with Judge Nixon's severance ruling, I filed a motion *in limine* in advance of trial in an effort to prevent the government from introducing evidence related to West Court on the grounds that allowing the introduction of such

6

evidence would "gut the severance ruling that the Court has entered in this case." I vigorously argued that Count One and Counts Two through Five represented two entirely discrete units of prosecution and that introduction of evidence of the latter would violate Rule 403 of the Federal Rules of Evidence and unfairly prejudice Mr. Patterson by allowing the prosecution to use unrelated conduct from the West Court incident to shore up Count One. The government maintained that it needed to connect Mr. Patterson to the West Court residence because it was, in turn, connected with a Ford Expedition vehicle which it claimed had been used to execute the conspiracy charged in Count One. The government argued this justified introduction of pole cam surveillance, trash pulls, and other results of the investigation conducted at 1869 West Court. The motion *in limine* was denied. The trial record reflects that on February 16 and 17, 2013, that I consistently objected to the evidence seized from West Court and the testimony related to same. In my motion for judgment of acquittal after the government had rested its case, I renewed a previous motion for mistrial based on Judge Nixon's *ex parte* communications with the jury, renewed the motion to sever counts, renewed the motion *in limine* regarding the West Court evidence, and renewed the motion to suppress the fruits of the search of 2211 Ladd Drive. The Court summarily denied these motions.

*The Search of Ladd Drive*

With Mr. Patterson's knowledge and approval, I filed a motion to suppress the fruits of the search of 2211 Ladd Drive and for a *Franks* Hearing challenging the anonymous tip information contained in the warrant, a lack of nexus, the use of oral testimony by the affiant to secure the warrant from the issuing magistrate, a *Franks* challenge attacking what Mr. Patterson and I characterized as a misleading, false statement which went to the heart of what we perceived to be scant, flawed probable cause in support of the warrant, and anticipated the government's

7

reliance on *Leon*. In Mr. Patterson's petition, his post-conviction lawyers suggest that Mr. Patterson preferred to ground the motion to suppress in a theory that officers had forged the signature of Montgomery County General Sessions Judge John Jackson Hestle, the issuing magistrate, on a fake search warrant. At Mr. Patterson's request, I investigated his suspicions about the lack of a search warrant and the cooked up Hestle signature. On October 4, 2011, I traveled to the Montgomery County Circuit Court Clerk's Office in Clarksville, Tennessee, and met with Deputy Clerk Denise Williams, 931-648-5700, extension 7490, assigned to the General Sessions Division. I have retained her card and I have a transcript of a follow-up voicemail message that she left me on my work telephone later in the day on October 4, 2011. Ms. Williams advised me that although she could not find a copy of the search warrant issued for 2211 Ladd Drive, she did find Notices of Property Seizure prepared by Agent Tim Anderson, Clarksville Police Department, dated December 6, 2006, which refer directly to the search warrant issued by Judge Hestle on December 1, 2006 for the Ladd Drive address. I subpoenaed Agent Anderson for the evidentiary hearing conducted on September 1, 2010 regarding the Patterson motion to suppress the fruits of the search of Ladd Drive and for a *Franks* Hearing. Agent Anderson was the affiant on the challenged search warrant and the subpoena commanded him to bring certain information regarding an anonymous tip which he allegedly received in November 2005. The search conducted by the Clarksville Police Department was done at the request of Nashville DEA based upon information which had been derived from a DEA wiretap in another state. The transcript of the hearing on the motion to suppress conducted in *United States of America v. Adrian Dewayne Patterson, MDTN Case No. 3:09-cr-00047*, designated as Docket Entry 151 in that case, reflects that I questioned Agent Anderson extensively about his interactions with General Sessions Judge Hestle on the evening of December 1, 2006. A review

of that transcript reveals that there is no credible evidence that Judge Hestle did not sign and issue the challenged warrant. Judge Hestle passed away on December 18, 2008, two years after issuing the Ladd Drive warrant.

*Removal of Deliberating Juror by Judge Nixon*

The jury was charged on February 22, 2013. At 10:52 a.m. the jury retired from open court to deliberate. Sometime after the noon recess Judge Nixon reported receiving a message from the jury, "we cannot reach a unanimous decision on either Defendant." Judge Nixon reported considering providing the jury with a modified *Allen* charge, that "there [was] no reason to believe that another jury would find it any easier," and then send them home to think about it and come back in the morning. I expressed concern with providing a modified *Allen* charge, but recognized that it was permitted by the Sixth Circuit. Judge Nixon brought out the jury and gave the modified charge and sent them home for the day at 3:27 p.m. The next morning, February 23, 2012, after only brief additional deliberation, the Court received yet another message from the jury:

> Judge Nixon, one of the Jurors overheard a fellow Juror [Ivy Leclair] commenting on having prior information about drug dealing that she did not reveal during Jury selection. I feel that this prior information could perhaps be influencing her ability to reach a fair decision and should have been made known during the selection process. Thus, can we consider removing this Juror and using one of the Alternates?

I promptly objected to the removal of any Juror, citing *United States v. Hernandez*, 862 F.2d 17, 17 (2d Cir. 1988), for the proposition that "[a] Juror may not be removed from a deliberating Jury in order to avoid a hung Jury." Judge Nixon decided to bring the jurors out, starting with the Foreperson, and interview them. I next read to the Court from *United States v. Brown*, 823 F.2d 591, 596 (D.C. Cir. 1987), "[i]f the Record evidence discloses any possibility that a Juror's request to be excused after deliberations have begun stems from the Juror's view

9

that the Government's evidence is insufficient, the Court must deny the request." I also objected to the district court inquiring too closely into a juror's motivations pursuant to the *Brown* decision. At 10:55 a.m., the foreperson, Dana Mennen, was called to answer questions regarding the message. The court decided not to question any of the jurors under oath. Judge Nixon first warned Foreperson Mennen to refrain from revealing in any way the direction the jurors were leaning. The Foreperson reported that another juror had overheard juror Ivy Leclair commenting on information, "[n]ot on this trial, but information on what this trial deals with, that the Juror that reported it to me indicated that it was prejudicing [Leclair] against this trial, and that the Juror that reported it to me said she did not reveal this during Jury selection." Juror Suzanne Malone was the juror who supposedly overheard the comments. Foreperson Mennen was then instructed not to reveal anything about these proceedings to the other jurors and excused. At 10:58 a.m., Juror Malone entered the courtroom. Judge Nixon warned her he did not want to know which way the jury was leaning. Juror Malone thought that another Juror, Lucas Gates, may also have heard comments made by Leclair. Juror Malone reported that when the jury was deliberating, Leclair "mentioned that she knew some people like that, what we were – as far as what – kind of like what's involved in this type of case. That's all she said." At 11:02 a.m. Juror Gates was called into the courtroom. Again, Gates was first warned not to reveal in any way the jury's leanings. Gates reported that Leclair "mentioned that she knew people that did drugs and knew people that trafficked drugs." Judge Nixon then asked, "[d]id she say anything about that and how that influenced her one way or another?" And, "[d]id she indicate what that was – how she was thinking as a result of knowing that?" Gates responded, "[s]he mentioned at two different times that she knew people that used drugs and dealt drugs and that she'd seen it – one time she mentioned that she'd seen it being dealt, and another time she mentioned that she never

actually saw the people dealing drugs. *I don't think she ever in the same conversation tied together that that is how she was influenced.*" Gates then said, "I think there are other factors that – and I don't know if I can say something without you directly asking me." After Gates was excused, AUSA Koshy asserted that he would have exercised a peremptory against Leclair if she revealed this information during voir dire and implied that she had purposely withheld it. I pointed out that there were not any questions asked by the court or the lawyers that would have called for a response on this issue from Leclair. I also expressed concern that calling Leclair for questioning might make her surrender her principles and beliefs about the sufficiency of the government's proof in the case. Nevertheless, at 11:11 a.m., Juror Ivy Leclair was called into the courtroom. Judge Nixon began by warning her that he did not wish to know which way any juror was leaning in the case, or how she was leaning in the case. Juror Leclair reported that, "I'd never seen anybody doing drugs, but I knew that they were drug users but I never saw them do drugs in my presence. But I overheard other people tell me that they were drug users." Leclair reported that she never saw any drug dealing. Judge Nixon then dismissed Leclair without asking whether these experiences may affect her ability to serve as a fair and impartial juror. Without making any findings as to why, Judge Nixon decided to excuse Ivy Leclair from the jury and replace her with an alternate, Christy Smith. Ms. Smith had not been sequestered or told not to talk about the case when the jury was sent to deliberations. I reported that the alternates were able to see the Defendants entering from a secured door and, therefore, knew that they were in custody. I further contended that there had been an insufficient showing that Ms. Leclair could not discharge her duty as a juror. I objected to Leclair's removal from the jury. Judge Nixon was unmoved and Leclair was excused at 11:20 a.m. At this point, I made clear for the record that this was the second day of deliberations and after the first day there were three hours or so before

they gave the Court a note saying they were unable to reach a unanimous verdict. I further expressed concerns that the reason for the less than unanimous verdict was Leclair's resistance and that Patterson's right to a unanimous verdict was violated by replacing her. Regardless, at 11:27 a.m., Alternate Juror Smith was placed on the jury and at 11:31 the new jury was instructed to begin deliberations anew. At 11:33 a.m., the jury retired to begin deliberations anew. At 1:43 p.m., the jury returned to open court and delivered a verdict of guilty. Post-conviction counsel criticizes me for not making more of the fact that Mr. Leclair is black. At that point in the trial, I was more concerned about losing a deliberating Juror who, in my view, was strongly leaning to acquitting Mr. Patterson. The trial transcript clearly reflects that Ivy Leclair is African-American. Like me, Chief Judge Cole, who is African-American, did not focus on Ms. Leclair's race but rather the fact that she was "indeed the lone 'holdout' from a unanimous verdict." *United States v. Patterson*, Sixth Circuit Case Nos. 12-5305/5726/5741, at p.29, fn.2.

*Pre-Indictment Delay*

I did not file a motion to dismiss Count One based on pre-indictment delay since the law would not have supported such a motion.

*Miscellaneous – Discovery*

At an October 5, 2009 status conference, shortly after I had entered my appearance and substituted in as counsel, conducted by Judge Trauger before transferring the case to Senior Judge Nixon, the status of discovery was discussed on the record. AUSA Koshy reminded Judge Trauger that at a prior hearing, before I had entered my appearance, Mr. Patterson had told the Court that Mr. Funk had shown him written discovery that Funk had printed off of a disk provided by the government. Mr. Koshy noted that it was the government's intention to supersede the indictment and include drugs seized at the time of Mr. Patterson's arrest at 1869

Case 3:09-cc-00243 Document 583-1 Filed 03/03/20 Page 12 of 13 PageID #: 6681

West Court. Koshy also stated on the record that Mr. Patterson would face a minimum mandatory punishment of life imprisonment if convicted of the original and/or superseding indictments.

**FURTHER AFFIANT SAITH NOT.**

*/s/ Peter J. Strianse*
PETER J. STRIANSE, ESQ.

STATE OF TENNESSEE  )
COUNTY OF DAVIDSON  )

Sworn to and subscribed to before me this 22nd day of December, 2020.

*/s/ Stephanie Yarbrough*
NOTARY PUBLIC

My Commission Expires: March 19, 2023

[Notary Seal: STEPHANIE YARBROUGH, TENNESSEE NOTARY PUBLIC, COUNTY OF WILLIAMSON]

13