| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:09-cr-00047-1 |
| | ) | Chief Judge Waverly D. Crenshaw, Jr. |
| ADRIAN DEWAYNE PATTERSON | ) | |

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The United States of America, by and through undersigned counsel, respectfully submits this response in opposition to Defendant Adrian Dewayne Patterson's Motion for Compassionate Release. (Motion, DE 650, Page ID#7654). The defendant contends that he can establish extraordinary and compelling reasons for his early release because a change in law—here, Congress's nonretroactive amendments to 21 U.S.C. § 841(b)'s recidivist enhancement in the First Step Act of 2018—has produced a gross disparity between his "unusually long" mandatory life sentence and the sentence a court would likely impose on him today, that, in the alternative, "other reasons" also establish extraordinary and compelling reasons for release, and that the 18 U.S.C. § 3553(a) factors weigh in favor of his release. (*Id.*); U.S.S.G. § 1B1.13(b)(5-6). Patterson's motion is unavailing for several reasons.

As this Court noted in denying Patterson's previous motion for compassionate release, Patterson is not entitled to early release because "Nonretroactive legal developments do not factor into the extraordinary and compelling legal analysis. Full stop." (Order, DE 645, PageID# 7569) (quoting *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc)). The fact that the Sentencing Commission has, in the aftermath of *McCall*, defined "extraordinary and compelling reasons" in § 3582(c)(1)(A) to include nonretroactive legal changes does not change the outcome. That is because the Commission exceeded the bounds of its delegated authority in

promulgating an amendment that conflicts with the Sixth Circuit's interpretation of § 3582(c)(1)'s plain language. *Cf. Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984 (2005) ("[A] precedent holding a statute to be unambiguous forecloses a contrary agency construction."). Accordingly, Patterson cannot establish extraordinary and compelling reasons for release.

And even if he could make such a showing, Patterson remains a danger to the community, U.S.S.G. § 1B1.13(a)(2), and the 18 U.S.C. § 3553(a) factors do not weigh in favor of his release. Patterson conspired to distribute at five kilograms or more of cocaine as part of a large drug conspiracy, and he qualified as a Career Offender pursuant to U.S.S.G. § 4B1.1 (Jury Verdict, DE 264; PSR, ¶¶ 10, 37). As such, the United States respectfully submits that the defendant's motion should be denied.

## BACKGROUND

### A. **The Defendant's Underlying Criminal Case**

#### *1. The Defendant's Criminal Conduct*

The defendant's case arises out of a large drug conspiracy in Montgomery County, Tennessee, which involved the possession and distribution of more than 150 kilograms of cocaine. (PSR, ¶ 11). Between January 1, 2004, and December 1, 2006, the defendant, John Banks, and others paid for multiple kilograms of cocaine and arranged for the transportation of that cocaine to Clarksville, Tennessee, by other conspirators such as Herman Majors and Cleo Patterson. (*Id.*) The defendant paid those who transported the drugs and drug proceeds with case and/or quantities of cocaine. (*Id.*) During the conspiracy, cocaine and cash were transported in vehicles with sophisticated hidden compartments. (*Id.*) All of these vehicles were controlled by the defendant, and the hidden compartments were built by a person associated with Bassim Fardos. (PSR, ¶ 11).

2

The defendant and Bassim Fardos split the expenses for having these compartments built. (*Id.*)

Once the kilograms of cocaine arrived in the Clarksville area, coconspirators distributed that cocaine; however, some of the cocaine was first cooked into crack cocaine before being distributed. (PSR, ¶ 12). Portions of the cash gathered from selling the cocaine and crack cocaine were then reinvested into obtaining more cocaine. (*Id.*)

### 2. *The Defendant Is Convicted at Trial and Sentenced to a Mandatory Life Sentence on Count One.*

In 2009, the defendant and his co-conspirators were charged with conspiracy to distribute and possess with intent to distribute 5 kilograms grams or more of cocaine, in violation of 21 U.S.C. § 846. (Complaint, DE 1, PageID# 3-4; Indictment, DE 9, Page ID# 12-14). On September 21, 2011, a federal grand jury handed down a Superseding Indictment. (Superseding Indictment, DE 192, Page ID# 697-701). Prior to trial, the United States also filed a 21 U.S.C. § 851 Information alleging that the defendant had previously been convicted of two felony drug offenses. (First 851 Information, DE 171, Page ID# 647-48; Second 851 Information, DE 242, Page ID# 1149-50.)

Following the Superseding Indictment, the defendant filed a motion to sever Counts Two through Five. (Motion to Sever Counts, DE 215, PageID# 785-88.) On February 6, 2012, the court granted the defendant's motion to sever Counts Two through Five. (Order, DE 241, PageID# 1146-48.)

As a result, the defendant was subject to mandatory term of life imprisonment on Count One when his case proceeded to trial in February 2012. After a 11-day trial, the defendant was convicted of conspiracy to possess with intent to distribute controlled substances (21 U.S.C. § 846) as charged in the Superseding Indictment. (Redacted Jury Verdict, DE 264).

3

The defendant's case proceeded to sentencing. (Sentencing Hearing Transcript, DE 342). Prior to the sentencing hearing, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). (PSR, DE 311). As relevant here, the PSR recommended that the defendant be assigned an Offense Level of 44 and a Criminal History Category of VI. (*Id.* at ¶¶ 37-31, 47-48). The PSR likewise recommended that the defendant qualify as a Career Offender due to two Tennessee "controlled substance offense" convictions. (*Id.* at ¶ 37). The defendant's Offense Level and Criminal History Category resulted in a guideline range of life imprisonment. (*Id.* at ¶ 71).

At his June 2012 sentencing hearing, the Court found that the defendant had two prior felony drug convictions, which had been noticed under § 851, and so the defendant was subject to a mandatory minimum life sentence. (Judgment, DE 302, Page ID# 1324-25; Second 851 Information, DE 242, Page ID# 1149-50). The Court then sentenced the defendant to life imprisonment on Count One. (*Id.* Page ID# 1325). The Sixth Circuit rejected the defendant's direct appeal challenging his sentence and conviction. *United States v. Patterson*, 587 Fed.Appx. 878 (6th Cir. Oct. 15, 2014).

After the Sixth Circuit Court of Appeals issued its decision and affirmed the judgment, the defendant filed a petition to rehear and for rehearing *en banc*, which was denied. Thereafter, the defendant filed a petition for *writ of certiorari* to the U.S. Supreme Court, which was denied. (Petition for Writ of Certiorari, DE 403, PageID# 5611; Denial of Petition for Writ of Certiorari, DE 406, PageID# 5615.)

### B. Post-Conviction Litigation

In 2016, the defendant filed a *pro se* 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence, claiming (among other things) ineffective assistance of counsel, errors in the

calculation of his criminal history, and improper removal of a juror. (Pro Se Motion to Vacate, Case No. 3:16-cv-2623, Civ. DE 1, Page ID# 1). On February 12, 2017, the Court appointed the Office of the Federal Public Defender to represent Patterson. (Order, Case No. 3:16-cv-2623, Civ. DE 3, PageID# 41). On September 18, 2020, Patterson filed his first Amended Petition for Relief under 18 U.S.C. § 2255. (First Amended Petition, Case No. 3:16-cv-2623, Civ. DE 62, PageID# 168). The defendant's motion is still pending.

The United States is aware Patterson submitted a clemency petition to President Biden, but does not have any information regarding the status of this petition.

### C.  <u>The Defendant Moves for Compassionate Release.</u>

On January 28, 2021, the defendant submitted a *pro se* motion seeking a sentence reduction to time served, which the Court received. (Pro Se Motion, DE 574). This Court appointed the Federal Public Defender to review the defendant's motion and file a supplemental brief, if the Federal Public Defender believed the defendant might be entitled to relief. On March 3, 2021, defense counsel filed a supplemental brief on the defendant's behalf arguing that he should receive a sentence reduction based upon the First Step Act's changes to federal drug sentencing laws, the disparity between his sentence and what was offered in a plea bargain, the defendant's rehabilitation, and his increased risk of severe illness from COVID-19. (Supplemental Motion, DE 581). The supplemental brief proposed the Court reduce the defendant's mandatory life sentence to a term of 17 years' imprisonment. (*Id.* at 16).

The United States responded in opposition, arguing that neither nonretroactive changes in federal sentencing law nor his health conditions during the COVID-19 pandemic amounted to an extraordinary and compelling reason for a sentence reduction. (Response in Opposition, DE 583, PageID# 6696-6708). This Court denied the defendant's motion in an February 6, 2023

5

memorandum opinion, holding that Sixth Circuit precedent required it to find that nonretroactive changes to sentencing law and his medical conditions did not amount to extraordinary and compelling reasons in support of a sentence reduction. (Memorandum and Order, DE 645, Page I.D. #7565-69).

### D. <u>The Sentencing Commission Amends U.S.S.G. § 1B1.13 and the Defendant Moves for Compassionate Release.</u>

On April 5, 2023, the Sentencing Commission voted to promulgate various amendments to the federal sentencing guidelines, including to U.S.S.G. § 1B1.13. *"Back in Business" U.S. Sentencing Commission Acts to Make Communities Safer & Stronger*, April 5, 2023, https://www.ussc.gov/about/news/press-releases/april-5-2023. Relevant here (and as discussed in more detail *infra.* at 14-16), the Commission promulgated U.S.S.G. § 1B1.13(b)(6), which purports to allow a defendant to establish "extraordinary and compelling reasons" for early release within the meaning of 18 U.S.C. § 3582(c)(1)(A) if he can show that he has served at least 10 years of an "unusually long sentence," and that there has been a change in law that would produce a gross disparity between the sentence the defendant is serving and the sentence that would likely be imposed today. The Commission's amendments to U.S.S.G. § 1B1.13 went into effect on November 1, 2023, and the defendant's instant motion for compassionate release followed. (Motion, DE 2085, Page I.D. #12031).

## ARGUMENT

### I. Background of the Compassionate Release Statute, 18 U.S.C. § 3582(c)(1).

### A. <u>Congress Passes the Sentencing Reform Act of 1984.</u>

The Sentencing Reform Act of 1984, Pub. L. No. 98-473, Tit. II, Ch. II, 98 Stat. 1987 (18 U.S.C. § 3551 *et seq.*), "overhaul[ed] federal sentencing practices." *Tapia v. United States*, 564

U.S. 319, 325 (2011). To make prison terms more determinate, Congress established the Sentencing Commission as an independent agency in the Judicial Branch and "authorized it to promulgate Sentencing Guidelines and to issue policy statements." *Dillon v. United States*, 560 U.S. 817, 820 (2010); *see* 28 U.S.C. §§ 991, 994(a). "The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system," and Congress directed the Commission to "eliminate unwarranted disparities in punishment of similar defendants who commit similar crimes." *Neal v. United States*, 516 U.S. 284, 290-91 (1996).

Congress also abolished the practice of federal parole, specifying that a "court may not modify a term of imprisonment once it has been imposed," except in certain enumerated circumstances. 18 U.S.C. § 3582(c); *see Tapia*, 564 U.S. at 325. One of those circumstances, set forth in 18 U.S.C. § 3582(c)(1)(A) (and commonly referred to as "compassionate release"), authorizes a court to "reduce [a] term of imprisonment . . . , after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds," as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." As originally enacted, Section 3582(c)(1)(A) authorized such reductions only "upon motion of the Director of the Bureau of Prisons" ("BOP").[1] Sentencing Reform Act § 212(a)(2), 98 Stat. 1998.

---

[1] Under the system of federal parole, 18 U.S.C. § 4205(g) provided the Bureau of Prisons with authority to move "[a]t any time" for the sentencing court to "reduce any minimum term [of imprisonment] to the time the defendant has served." 18 U.S.C. § 4205(g) (repealed). BOP regulations explained that the Bureau generally used that authority "only in particularly meritorious or unusual circumstances which could not reasonably have been foreseen by the court at the time of sentencing," including where "there is an extraordinary change in an inmate's personal or family situation or if an inmate becomes severely ill." 45 Fed. Reg. 23,364, 23,366 (Apr. 4, 1980). As the Senate Report accompanying the Sentencing Reform Act explains, Section 3582(c)(1)(A) was intended to be "similar to the authority" afforded to the BOP under 18 U.S.C. § 4205(g). S. Rep. No. 98-225, at 121 n.298 (1983).

7

Congress directed the Sentencing Commission to promulgate "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [Section] 3582(c)." 28 U.S.C. § 994(a)(2)(C). Congress instructed the Commission, in promulgating policy statements regarding Section 3582(c)(1)(A), to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress likewise specified that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

In 2006, the Commission promulgated the policy statement in § 1B1.13 of the Sentencing Guidelines. As amended in 2016, the policy statement described four categories of reasons that should be considered extraordinary and compelling: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons" "determined by the Director of the Bureau of Prisons" to be "extraordinary and compelling" "other than, or in combination with," the reasons described in the other three categories. Sentencing Guidelines App. C Supp., Amend. 799 (Nov. 1, 2016).

**B. Congress Passes the First Step Act of 2018.**

In the First Step Act of 2018, Congress amended Section 3582(c)(1)(A) to allow defendants, as well as the BOP itself, to file motions for a sentence reduction. *See* Pub. L. No. 115-391, Tit. VI, § 603(b), 132 Stat. 5194, 5239. As modified, Section 3582(c)(1)(A) now states:

> the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

8

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

Shortly after the First Step Act's enactment, the Sentencing Commission lost a quorum of voting members, and remained without a quorum for more than three years. *See* 88 Fed. Reg. 28,254, 28,256 (May 3, 2023). The Commission thus did not immediately amend the policy statement to account for the First Step Act's procedural change. In the intervening years, the Sixth Circuit—and nearly every other federal court of appeals—held that the existing policy statement's description of what should be considered "extraordinary and compelling" reasons for a sentence reduction was not applicable to defendant-filed motions. *United States v. Elias*, 984 F.3d 516, 520 (6th Cir. 2021) ("[W]e hold that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions."); *see also United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022) (collecting cases); *but see United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021).

As a result, and in the absence of a binding policy statement, the federal courts of appeals were obliged to construe the plain meaning of the phrase "extraordinary and compelling reasons" as used in Section 3582(c)(1)(A)(i). The majority of circuits to consider the question—including the Sixth Circuit—determined that a nonretroactive change in the law, whether considered alone or in combination with other factors, cannot constitute an "extraordinary and compelling" reason for a sentence reduction. *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc) ("Nonretroactive legal developments do not factor into the extraordinary and compelling analysis. Full stop."); *See also United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021); *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021); *United States v. Crandall*, 25 F.4th 582, 585-86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198-1200 (D.C. Cir. 2022); *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam)

(unpublished).  Four circuits, in contrast, have taken the view that a change in the law can form part of an individualized assessment of whether to grant a sentence reduction, but only in combination with other case-specific factors.  *Ruvalcaba*, 26 F.4th at 28; *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1097-98 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047-48 (10th Cir. 2021).

### C. The Sentencing Commission Regains a Quorum and Promulgates Amendments to U.S.S.G. § 1B1.13.

In 2022, the Sentencing Commission regained a quorum, and after public notice and comment, voted on April 5, 2023 to promulgate amendments to the Guidelines Manual, including to Section 1B1.13's policy statement.  88 Fed. Reg. 28,254, 28,254-28,281 (May 3, 2023); *see also* Sentencing Commission Public Meeting Tr. 27-82 (Apr. 5, 2023) ("4/5/23 Tr.").[2]  The amendments to Section 1B1.13 render the policy statement applicable to defendant-filed motions. As relevant here, the amendments also purport to allow, with certain limitations, consideration of changes in law—including ones Congress has chosen not to make retroactive—when determining whether a defendant has presented an extraordinary and compelling reason for a sentence reduction.  That change is reflected in new subsections (b)(6) and (c), which provide:

> (6) <u>Unusually Long Sentence</u>.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

> (c) <u>Limitation on Changes in Law</u>.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether

---

[2] https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_transcript.pdf.

an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

88 Fed. Reg. at 28,255; *see* U.S.S.G. § 1B1.13(b)(6), (c).

The Commission divided 4-3 on whether to promulgate the amendments to Section 1B1.13. *See* 4/5/23 Tr. 81-82, available at https://www.ussc.gov/policymaking/meetings-hearings. The dissenting Commissioners explained that, in their view, the policy statement "goes further than the Commission's legal authority extends," and the Commission had made "a seismic structural change to our criminal justice system without congressional authorization or directive." *Id.* at 60 (Commissioner Wong, delivering joint statement). In particular, the Commission's decision to allow nonretroactive changes in law to establish a basis for a sentence reduction "supplants Congress's legislative role" and would authorize courts "to revisit duly imposed criminal sentences at the ten-year mark based on intervening legal developments that Congress did not wish to make retroactive." *Id.* at 60-61. "The separation of powers problem" with that result, the dissenting Commissioners explained, "should be apparent," as "[i]t is not the Commission's role to countermand Congress's legislative judgments." *Id.* at 61.

The Commission submitted its proposed Guidelines amendments to Congress on April 27, 2023. Because Congress did not act to modify or disapprove of the amendments, they became effective on November 1, 2023. 88 Fed. Reg. at 28,254; *see* 28 U.S.C. § 994(p).

## II.   The Defendant Cannot Establish Extraordinary and Compelling Reasons for Release.

Despite binding Sixth Circuit precedent to the contrary, the defendant argues that he can establish an "extraordinary and compelling reason" for release because a change in law—here, Congress's nonretroactive amendments to 21 U.S.C. § 841(b)'s recidivist enhancement in the First

11

Step Act of 2018—has produced a gross disparity between his "unusually long" mandatory life sentence and the sentence a court would likely impose on him today, and because, in the alternative, "other reasons" within the meaning of U.S.S.G. § 1B1.13(b)(5) establish grounds for early release. (Motion, DE 2085, Page I.D. #12031). The defendant's arguments remain foreclosed by Sixth Circuit precedent, including the Court's en banc decision in *McCall*, 56 F.4th at 1050, and as explained in greater detail below, the Sentencing Commission's subsequent contrary interpretation of 18 U.S.C. § 3582(c)(1) does not change the analysis.[3]

**A. The Sentencing Commission Exceeded Its Congressionally Delegated Authority in Promulgating Subsection (b)(6).**

**1. In Exercising Its Authority, the Commission Cannot Act Contrary to the Statute.**

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).[4] Such a delegation of authority,

_____

[3] In *McCall*, the Sixth Circuit anticipated the precise issue this Court now confronts, noting that

 Whether the Commission could issue a new policy statement that describes "extraordinary and compelling reasons" in a way that is inconsistent with our interpretation of the statute's language is a question that we need not resolve in the absence of an applicable statement. See *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005).

56 F.4th at 1055 n.3.

[4] The Supreme Court has granted certiorari in *Loper Bright Enterprises v. Raimondo*, No. 22-451, to consider whether the Court's decision in *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), should be overruled. Because *Chevron* concerns the deference owed to an agency when Congress has only implicitly delegated interpretive authority, *Chevron*, 467 U.S. at 844, the Court's resolution of *Loper* will not affect the deference due when Congress has *expressly* identified a gap for an agency to fill. *See United States v. Mead Corp.*, 533 U.S. 218, 228-29 (2001) (distinguishing among express and implicit delegation); *see also Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 286 (2016) (Thomas, J., concurring) (explaining that an "express and clear conferral of authority" to an agency does not implicate *Chevron*).

however, "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). Even when reached through an exercise of delegated authority, an agency's interpretation of a statute must be set aside if the agency's interpretation is not "reasonable." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011) (internal quotation marks omitted); *see Batterton*, 432 U.S. at 428. An agency cannot adopt an impermissible reading of the statute—*i.e.*, a reading that exceeds the gap left by Congress. *See Mayo Found.*, 562 U.S. at 53-58; *Batterton*, 432 U.S. at 428.

The Sentencing Commission in particular "was not granted unbounded discretion," and as the Supreme Court has explained, "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997); *cf. Mistretta v. United States*, 488 U.S. 361, 379 (1989) (reasoning that the discretion vested in the Commission does not violate the nondelegation doctrine because the Sentencing Reform Act "sets forth more than merely an 'intelligible principle' or minimal standards" to guide that discretion). In the Sentencing Reform Act, itself, Congress directed the Commission to ensure that its guidelines and policy statements remain "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a). And Congress authorized the Commission only to "make *recommendations to Congress* concerning modification or enactment of statutes relating to sentencing." *Id.* § 995(a)(20) (emphasis added).

### 2. Subsection (b)(6) Conflicts With § 3582(c)(1)(A)'s Plain Text, Context, and Purpose—As the Sixth Circuit Has Held.

Section 3582(c)(1)(A) provides an "except[ion]" to the overarching principle of federal sentencing law that a "federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon*, 560 U.S. at 819 (quoting 18 U.S.C. § 3582(c)). Congress plainly instructed that any reason sufficient to overcome that general principle must be "extraordinary and

13

compelling." 18 U.S.C. § 3582(c)(1)(A)(i). No reasonable interpretation of that phrase's text, particularly when considered in light of the statute's structure and purpose, can encompass nonretroactive or intervening changes in law. The Sixth Circuit, along with five of its sister circuits, has already held as much, determining that Section 3582(c)(1)(A)(i)'s clear meaning excludes intervening developments in sentencing law from constituting "extraordinary and compelling" reasons for a sentence reduction, whether considered alone or in connection with other factors and circumstances. *McCall*, 56 F.4th at 1050; *see also Andrews*, 12 F.4th at 261; *Thacker*, 4 F.4th at 571; *Crandall*, 25 F.4th at 585-86; *Jenkins*, 50 F.4th at 1198-1200; *McMaryion*, 2023 WL 4118015, at *2. The Commission's interpretation of the statute as set forth in subsection (b)(6) is unreasonable and therefore invalid. *Mayo Found.*, 562 U.S. at 58; *see LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

    *a. The Commission Does Not Have the Authority to Override the Sixth Circuit's Interpretation of "extraordinary and compelling" in § 3582(c)(1)(A).* In *McCall*, the Sixth Circuit, sitting en banc, held that "[n]onretroactive legal developments, considered alone or together with other factors, cannot amount to an 'extraordinary and compelling reason' for a sentence reduction." 56 F.4th at 1065-66. Because it did not consider there to be a then-applicable policy statement, the *McCall* Court directly interpreted the statutory phrase "extraordinary and compelling" reasons. *Id.* at 1054-55.

    "[T]he Commission does not have the authority to amend the statute" or "to override the statute as [the full Sixth Circuit] has construed it."[5] *Neal*, 516 U.S. at 290, 294; *see United States*

---

[5] Because the *McCall* Court never suggested that Section 3582(c)(1)(A)(i)'s text is ambiguous, it also is unnecessary for this Court to "decide what, if any, deference [would be] owed the Commission in order to reject its alleged contrary interpretation." *Neal*, 516 U.S. at 295; *see also*

14

*v. Koons*, 850 F.3d 973, 979 (8th Cir. 2017) (Sentencing Commission cannot "overrule circuit precedent interpreting a *statutory* provision") (quoting *United States v. Williams*, 808 F.3d 253, 266 (4th Cir. 2015) (Traxler, C.J., dissenting))). The Sixth Circuit's determination in *McCall* therefore remains binding on this Court, and the Commission's amendments to § 1B1.13 does not authorize the reconsideration of that precedent because "a precedent holding a statute to be unambiguous forecloses a contrary agency construction." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984 (2005); *see Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536-37 (1992) ("Once we have determined a statute's clear meaning, we adhere to that determination under the doctrine of *stare decisis*, and we judge an agency's later interpretation of the statute against our prior determination of the statute's meaning." (internal quotation marks omitted)).

This conclusion comports with applicable Supreme Court precedent, rejecting the Sentencing Commission's purported interpretation of a statute that was inconsistent with plain statutory language—including language the Court had previously authoritatively construed. In *Neal*, for example, the Court held that Guidelines commentary addressing the method for calculating the weight of LSD did not alter the Court's interpretation of the phrase "a mixture or substance containing a detectable amount" of certain drugs as used in 21 U.S.C. § 841(b). *Neal*, 516 U.S. at 287-89 (describing Court's prior decision in *Chapman v. United States*, 500 U.S. 453 (1991)). Although the Court considered it "doubtful" the Commission intended to "displace" the Court's interpretation of Section 841(b), the Court nevertheless explained that if the commentary

---

*DePierre v. United States*, 564 U.S. 70, 87 (2011) (explaining that the Supreme Court has not addressed what deference is owed to the Commission's interpretations of a statute); *LaBonte*, 520 U.S. at 762 n.6 ("Inasmuch as we find the statute at issue here unambiguous, we need not decide whether the [Sentencing] Commission is owed deference under *Chevron*.").

15

was intended to do so, the Commission's action "cannot be squared" with the Court's prior determination. *Id.* at 293-94. "Once we have determined a statute's meaning," the Court explained, "we adhere to our ruling under the doctrine of *stare decisis*, and we assess an agency's later interpretation of the statute against that settled law." *Id.* at 295; *see also LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

*Neal* compels the same result here. 516 U.S. at 293-95. The full Sixth Circuit has directly construed, as a statutory matter, the phrase "extraordinary and compelling" as used in § 3582(c)(1)(A). *McCall*, 56 F.4th at 1065-66. The Sentencing Commission "does not have the authority" to "override" that authoritative construction of the statute's clear meaning. *Neal*, 516 U.S. at 290, 294.

*b. At any Rate, the Sixth Circuit's Decision in McCall Is Correct.* To justify a sentence reduction under Section 3582(c)(1)(A)(i), a proffered reason must be both "extraordinary" and "compelling." As a matter of plain language, an intervening change in the law is neither. Congress's decision not to apply a statutory change in sentencing law retroactively, in particular, is neither extraordinary nor compelling. Consistent with the "'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute,'" *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018), the word "extraordinary" should be understood "to mean 'most unusual,' 'far from common,' and 'having little or no precedent,'" *McCall*, 56 F.4th at 1055 (quoting *Webster's Third New International Dictionary of the English Language* 807 (1971) (*Webster's*)). Far from being unusual, uncommon, or unprecedented, a defendant's lawfully imposed sentence simply reflects the law at the time he was sentenced. *See id.* at 1063 ("[T]here

16

is nothing extraordinary about the ordinary operation of our legal system, which assumes new statutes . . . have no retroactive effect.").

Here, the defendant invokes Congress's decision not to extend the First Step Act's amendments to 21 U.S.C. § 841(b)'s recidivist enhancement to defendants like him as a change in law warranting a sentence reduction. (Motion, DE 2085, Page I.D. #12042). In the First Step Act, Congress amended § 841(b)'s recidivist enhancement in a way that would reduce the defendant's mandatory life sentence for his Conviction in Count One to a mandatory-minimum sentence of either 15 years or 25 years imprisonment. (*Id.*; Judgment, DE 1428, Page I.D. #5838); § 401(a)(1)-(2), Pub. L. 115-391. In Section 401(c) of the Act, however, Congress made the deliberate choice not to make that amendment applicable to defendants who had been sentenced before the Act's enactment, specifying that the change would apply only "if a sentence for the offense has not been imposed as of such date of enactment." § 401(c), 132 Stat. 5221. In so doing, Congress adhered to "the ordinary practice" in "federal sentencing" of "apply[ing] new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey*, 567 U.S. at 280; *McCall*, 56 F.4th at 1056 ("That new statutes . . . apply only to defendants not yet sentenced is the expected outcome in our legal system . . . [a]nd what is expected cannot be extraordinary." (citations and internal quotation marks omitted)); *cf.* 1 U.S.C. § 109 (general nonretroactivity provision).

Given Congress's deliberate choice not to make the First Step Act's change to § 841(b)'s recidivist enhancement applicable to defendants who had already been sentenced, "there is nothing 'extraordinary' about" the fact that the defendant's sentence reflects the statutory penalty that existed at the time he was sentenced. *McCall*, 56 F.4th at 1055-56; *Thacker*, 4 F.4th at 574. That sentence "was not only permissible but statutorily required at the time." *United States v. Maumau*,

17

993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring). And when Congress enacted the First Step Act, it specifically declined to disturb the defendant's mandatory life sentence for his § 846 conviction, even as it made other (previous) statutory changes applicable to defendants previously sentenced.

In Section 404 of the same Act, for example, Congress expressly enacted a mechanism allowing defendants convicted under certain drug statutes (those for which penalties had been modified by certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372) to seek retroactive application of those statutory changes in their cases. Section 404 authorizes a sentencing court to "impose a reduced sentence as if [those provisions] of the Fair Sentencing Act" had been in effect at the time of the defendant's offense. § 404(b), 132 Stat. 5222. But Congress simultaneously declined to disturb §§ 841 and 846 sentences that had already been imposed notwithstanding the different penalties that Section 401 would require courts to apply at future sentencings. As *McCall* Court aptly pointed out, the "same Congress that carefully delineated between retroactive and nonretroactive criminal changes to criminal penalties" would not "somehow mean to use [the compassionate release statute] to unscramble [its stated] approach" to the nonretroactivity of changes in statutory law. 56 F.4th at 1056 (quoting *United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021)).

A nonretroactive change to a statutory provision likewise cannot constitute a "compelling" reason for a sentence reduction. When Congress enacted the Sentencing Reform Act of 1984, "[c]ompelling" meant (and still means) "forcing, impelling, driving." *Id.* at 1055 (quoting *Webster's* 463). Thus, for a reason to be "compelling" under Section 3582(c)(1)(A)(i), it must provide a "forcing, impelling, [or] driving" reason to disturb the finality of a federal sentence. *Id.* (internal quotation marks omitted). Even beyond the First Step Act's explicit determination not to

18

apply the amendment to § 841(b) retroactively, ordinary principles of nonretroactivity already consider, and reject, the notion that changes in statutory law generally should be applied retrospectively. Congress enacts new sentencing statutes against a background principle, codified in 1 U.S.C. § 109, that a criminal statute does not change the penalties "incurred" under an older criminal statute "unless the repealing Act . . . so expressly provide[s]." The "strong presumption against statutory retroactivity" "is 'deeply rooted in our jurisprudence' and 'embodies a legal doctrine older than our Republic.'" *Jenkins*, 50 F.4th at 1198 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). To treat a nonretroactive change in the law as a "compelling" reason to disturb a final sentence would thus undo the balance already struck by ordinary nonretroactivity principles. Nothing about a nonretroactive change in the law forces, impels, or drives such a nonsensical outcome.

Any disparity between the defendant's sentence and the sentence he would receive today is the product of deliberate congressional design—namely, Congress's decision not to make the First Step Act's changes to § 841(b)'s recidivist enhancement applicable to defendants who had been sentenced prior to the Act's paasage. As the Supreme Court has recognized, such "disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date)." *Dorsey*, 567 U.S. at 280. And treating Congress's express adherence to "ordinary practice" in federal sentencing, *id.*, "as simultaneously creating an extraordinary and compelling reason for early release" would contravene various canons of construction, *Andrews*, 12 F.4th at 261.

Accordingly, a nonretroactive change in the law cannot serve as an "extraordinary and compelling" reason for a sentence reduction in isolation or as adding to a package of such

"reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Whether considered alone or in combination with other asserted factors, the possibility that a previously sentenced defendant might receive a lower sentence if he were sentenced today is a "legally impermissible" consideration for purposes of determining whether an extraordinary and compelling reason exists. *Jenkins*, 50 F.4th at 1202 (internal quotation marks omitted); *see Jarvis*, 999 F.3d at 444 (explaining that a prospective change to sentencing law is a "legally impermissible ground" for finding an "extraordinary and compelling reason," even when it is "combined with" other considerations).

    *c. Section 3582(c)(1)(A)(i)'s Context Further Confirms that the Term "Extraordinary and Compelling" Cannot Encompass Intervening Changes in Law*. As explained, *supra* at 18-23, an intervening change in law is neither "extraordinary" or "compelling," and by using that phrase, Congress did place clear textual limits on the reasons the Commission could validly identify as warranting a sentence reduction. "Statutory construction," moreover, "is a holistic endeavor" and a provision "is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988). Other features of the scheme confirm that the phrase "extraordinary and compelling reasons" does not encompass changes in law.

    Most notably, in the very next paragraph of § 3582(c), Congress expressly addressed the retroactive application of some changes in law. In § 3582(c)(2), Congress authorized courts to modify a term of imprisonment where a defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see* 28 U.S.C. § 994(u) (directing the Commission to determine when such modifications are appropriate). There would have been no reason for "the same Congress, skeptical of sentence modifications as a general rule," to have "provide[d] for the retroactive application of specific

changes in sentencing law in § 3582(c)(2)" had Section 3582(c)(1)(A)(i) "already covered all legal developments, retroactive or not." *McCall*, 56 F.4th at 1056. That Congress did not similarly provide the Commission or district courts with authority to revisit sentences in light of statutory amendments or changes in decisional law suggests that Congress did not intend for Section 3582(c)(1)(A) to reach such changes.

Reducing sentences based on intervening changes in the law also would undermine congressional design more generally because a motion brought pursuant to 28 U.S.C. § 2255 is the "remedial vehicle" Congress "specifically designed for federal prisoners' collateral attacks on their sentences." *Jones v. Hendrix*, 599 U.S. 465, 473 (2023); *see United States v. West*, 70 F.4th 341, 346 (6th Cir. 2023) ("Because § 2255 provides a specific, comprehensive statutory scheme for post-conviction relief, any attempt to attack a prisoner's sentence or conviction must abide by its procedural strictures."); *Thacker*, 4 F.4th at 574. (explaining that § 2255 provides the "principal path" that Congress has "established for federal prisoners to challenge their sentences" after they have become final). Treating a nonretroactive change in the law as an "extraordinary and compelling" reason for a sentence reduction would allow defendants to "avoid the restrictions of the post-conviction relief statute by resorting to a request for compassionate release instead." *Crandall*, 25 F.4th at 586. It "would wholly frustrate explicit congressional intent to hold that [defendants] could evade" those restrictions "by the simple expedient of putting a different label on their pleadings." *Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973). Congress surely "knew of its specific statutory scheme authorizing post-conviction relief" both "when it [enacted Section 3582(c)(1)(A)] in 1984 and amended it in 2018," and had "Congress intended the compassionate-release statute to act as an exception to this post-conviction framework, it would have made that intent specific." *McCall*, 56 F.4th at 1057-58 (internal quotation marks omitted).

*d. A Contrary Conclusion Would Undermine the Sentencing Reform Act.* Recognizing intervening changes in law as extraordinary or compelling reasons for a sentence reduction also would undermine a primary purpose of the Sentencing Reform Act, in which § 3582(c)(1) was enacted. Through the Act, Congress sought to eliminate the "'unjustifi[ed]' and 'shameful' consequences" of a sentencing regime that produced "great variation among sentences imposed by different judges upon similarly situated offenders" and "uncertainty as to the time [an] offender would spend in prison." *Mistretta*, 488 U.S. at 366 (quoting S. Rep. No. 98-225, at 38, 65 (1983) (Senate Report)); *see also Neal*, 516 U.S. at 290-91 ("The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system"). The practices of federal courts and the Parole Commission left "each judge . . . to apply his own notions of the purposes of sentencing," resulting in an "astounding" and "inevitable disparity" in sentencing that was "not justified by differences among offenses or offenders" and was "unfair both to offenders and to the public." Senate Report at 38, 41, 45. "A primary goal" of the Act was "the elimination of unwarranted sentencing disparity." Senate Report at 52. In "overhaul[ing] federal sentencing practices" by "abandon[ing] indeterminate sentencing and parole," Congress sought to "channel[ ] judges' discretion by establishing a framework to govern their consideration and imposition of sentence." *Tapia*, 564 U.S. at 325.

Consistent with Congress's goal of determinate sentencing, § 3582(c)(1)(A) was enacted as a narrow "safety valve" for "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances." Senate Report at 55, 121. Congress anticipated that such "justification[s] for reducing a term of imprisonment" would arise in a "relatively small number" of cases, and specifically identified severe or terminal illness as the

22

archetype of "extraordinary and compelling circumstances" that would justify reducing a sentence. *Id.* at 55-56, 121.

Subsection (b)(6), however, purports to allow a district court to reduce a defendant's sentence when, in a district court's estimation, the defendant received "an unusually long sentence" that, accounting for nonretroactive changes in law, now represents a "gross disparity" from the sentence the court would likely impose today. U.S.S.G. § 1B1.13(b)(6). That authority is incompatible with the Sentencing Reform Act's overarching purpose and Congress's specific intent with respect to § 3582(c)(1)(A), and it effectively reproduces the indeterminate system the Act sought to eliminate, in which judges applied their own varied "notions of the purposes of sentencing." Senate Report at 38. Individual judges inevitably will have divergent views concerning the fairness of adhering to the ordinary practice of applying a change in law prospectively, whether a sentence lawfully imposed under the prior regime is "unusually long," and whether Congress's or the courts' assessment not to apply a change in law retroactively produces a "gross disparity," and what a "gross disparity" looks like. It is doubtful the Sentencing Reform Act "contained the[ ] seeds of its own destruction," *Jenkins*, 50 F.4th at 1202, and there is no basis to think that, notwithstanding the Act's express purpose to eliminate parole in favor of determinative sentencing, Congress nevertheless created such "a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy," *Crandall*, 25 F.4th at 586.

The Sentencing Commission's explanation for the amendment cites a single sentence from the Senate Report to support its conclusion that Section 3582(c)(1)(A)(i) allows courts to reduce "unusually long sentences." *See* 88 Fed. Reg. at 28,258. In the relevant passage, the Senate Judiciary Committee expressed its belief that the "unusual cases in which an eventual reduction in

the length of a term of imprisonment" would be "justified by changed circumstances" might include "cases of severe illness" or "cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence."  Senate Report at 55.  The Commission takes that line—which is ambiguous at best—out of context and elevates that single sentence above the Act's plain text and overarching purpose.  In context, the passage suggests only that Congress anticipated that the sort of "changed circumstances" that might warrant a sentence reduction would most often emerge during the duration of an "unusually long" period of incarceration—during which a prisoner might become elderly or infirm, for example.  *Id.*  Indeed, the passage makes clear that to justify even the reduction of an unusually long sentence Congress understood § 3582(c)(1)(A) to require the identification of particular "extraordinary and compelling circumstances."  *Id.*  The passage does not suggest that § 3582(c)(1)(A) provides authority to reduce any sentence a court subsequently comes to view, in hindsight, as "unusually long."

The Commission also invokes the First Step Act of 2018's stated intent to increase the use of sentence reduction motions.  *See* 88 Fed. Reg. at 28,256; § 603(b), 132 Stat. 5239.  But nothing about the First Step Act's procedural amendment to § 3582(c)(1)(A) or Congress's expectation that the amendment would lead to greater use of the provision "suggests Congress intended to change th[e] *substantive* status quo with a process-oriented amendment."  *McCall*, 56 F.4th at 1060 (emphasis added).  Congress's effort to allow defendants to file sentence-reduction motions directly sought to remedy perceived deficiencies in the BOP's preexisting procedures, which prevented the BOP from bringing § 3582(c)(1)(A) motions on behalf of some defendants who

satisfied longstanding criteria for relief.[6]   Congress, however, did not amend the statutory requirement that reasons for a sentence reduction be extraordinary and compelling.  Tellingly, the amendment explicitly conditioned a defendant's filing on a requirement that he first "exhaust[ ]" with BOP a request that BOP "bring a motion on the defendant's behalf."   18 U.S.C. § 3582(c)(1)(A).  Congress could not have expected BOP to evaluate whether an intervening change in law warranted a defendant's early release from custody; indeed, BOP typically plays no role in "determining the lawfulness of individual sentences," "calculating guideline ranges," or assessing the possible disparity produced by a defendant's sentence.  *See Jenkins*, 50 F.4th at 1205-06.  In short, nothing about the First Step Act's procedural amendment "indicates any intention on Congress's part" to "fundamentally change the nature of compassionate release." 4/5/23 Tr. 64-66 (Vice Chair Murray, delivering joint statement); *cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

   *e. Subsection (b)(6) Also Creates Separation of Powers Problems.*   Finally, the Commission's interpretation of § 3582(c)(1)(A) as empowering district courts to apply nonretroactive changes in law to particular defendants is in serious tension with basic separation-of-powers principles.  In upholding the Sentencing Commission's constitutionality, the Supreme Court observed that the Commission is not vested with "the legislative responsibility for establishing minimum and maximum penalties for every crime."   *Mistretta*, 488 U.S. at 396.  "Congress generally cannot delegate its legislative power to another Branch," *id.* at 372, and

---

[6] *See* Sentencing Guidelines App. C, Amend. 799 (noting evidence showing "inefficiencies that exist within the Bureau of Prisons' administrative review of compassionate release applications, which can delay or deny release, even in cases where the applicant appears to meet the criteria for eligibility"); U.S. Dep't of Justice, Office of the Inspector Gen., *The Federal Bureau of Prisons' Compassionate Release Program* 53 (2013) (finding that the "inconsistent and ad hoc implementation" of BOP's "compassionate release program" has "likely resulted in potentially eligible inmates not being considered for release").

"[w]hatever views may be entertained regarding severity of punishment, . . . these are peculiarly questions of legislative policy," *Gore v. United States*, 357 U.S. 386, 393 (1958). The Commission does not pose a nondelegation or separation-of-powers concern, the Court held, precisely because Congress delegated to the Commission "nonadjudicatory functions that do not trench upon the prerogatives of another Branch." *Mistretta*, 488 U.S. at 388. Subsection (b)(6) contravenes those limits by purporting to empower courts to ignore Congress's retroactivity determinations on a case-by-case basis.

The separation-of-powers concern is particularly apparent when one considers the Commission's directive regarding *its own* retroactivity determinations. Section 3582(c)(2) permits a defendant "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" to move for a sentence reduction "consistent with applicable policy statements issued by the Sentencing Commission," and Sentencing Guidelines § 1B1.10 identifies particular Guidelines amendments that the Commission has elected to make retroactive. *See* U.S.S.G. § 1B1.10(a), (d). In Subsection (b)(6), however, the Commission expressly excluded "an amendment to the Guidelines Manual that has not been made retroactive" from qualifying as an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13(b)(6); *see* 88 Fed. Reg. at 28,259. The Commission accordingly precluded courts from using compassionate release as an end-run around the Commission's own determinations concerning the retroactive application of its Guidelines amendments. But by permitting other changes in law, including a statutory change that *Congress* explicitly declined to make retroactive, to qualify, the Commission declined to afford the same respect to Congress's retroactivity determinations. That counterintuitive result cannot be squared with the

Commission's statutory authority.  *See, e.g.*, *LaBonte*, 520 U.S. at 757 (the Commission "must bow to the specific directives of Congress").

Indeed, the separation of powers concerns apply with particular force to the defendant's invocation of § 401 of the First Step Act as grounds for a sentence reduction. In the same statute in which Congress amended § 3582(c)(1)(A) to permit defendants to directly file sentence-reduction motions, Congress made the deliberate choice not to make § 401 applicable to a defendant who was sentenced before the First Step Act's enactment.  132 Stat. 5221.  Congress specified that the change would apply only "if a sentence for the offense has not been imposed as of such date of enactment."  *Id.*   Any disparity between the defendant's sentence and the sentence he would receive today thus is the product of deliberate congressional design, and there is no reason to think that "the same Congress that specifically decided to make these sentencing reductions non-retroactive in 2018 somehow mean[t] to use a general sentencing statute from 1984 to unscramble that approach."  *Jarvis*, 999 F.3d at 444; *see Andrews*, 12 F.4th at 261 ("[W]e will not construe Congress's nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release. Such an interpretation would sow conflict within the statute.").

### 3.  The Defendant's Counter-Arguments Are Unavailing.

The defendant, for his part, disregards that Subsection (b)(6) conflicts with § 3582(c)(1(A)(i)'s plain text, context, and purpose and instead merely asserts that the Sentencing Commission's expanded interpretation of "extraordinary and compelling reasons" in § 3582(c)(1)(A)(i) has "resolved th[e] conflict" between federal courts of appeals regarding the meaning of federal statutory language.  (Motion, DE 2085, Page I.D. #12046).  The defendant relies on two Supreme Court decisions, *Braxton*, 500 U.S. at 348–49, and *Batterton*, 432 U.S. at 425, to support this contention.  (Motion, DE 2085, Page I.D. #12046-47, n. 11).  These cases, the

defendant says, stand for the principle "that the Sentencing Commission may 'eliminate circuit conflicts over the meaning' of matters that Congress delegated to the Commission." *Id.* (quoting *Braxton*, 500 U.S. at 348-49)). But the defendant fails to recognize that *Braxton* involved the Commission's elimination of a circuit conflict over the meaning of a Sentencing Guideline, 500 U.S. at 348-49, while *Batterton* simply reaffirms the longstanding view that a "reviewing court is not free to set aside [an agency interpretation of a statute] simply because it would have interpreted the statute in a different manner." 432 U.S. at 425 (citing *American Telephone & Telegraph Co. v. United States*, 299 U.S. 232, 235-237 (1936)).

And importantly, neither case begins to explain why the Commission may permissibly interpret a federal *statute's* unambiguous language in a way that displaces federal appellate courts' prior contrary interpretation of the very same language in the very same statute. *Brand X Internet Servs.*, 545 U.S. at 984 ("[A] precedent holding a statute to be unambiguous forecloses a contrary agency construction."). Indeed, *Batterton* confirms that such an action is impermissible. 432 U.S. at 426, 428 (explaining that agency may not interpret a statute in a way that exceeds its statutory authority).

Accordingly, and notwithstanding the Commission's amendments to § 1B1.13, nonretroactive changes to federal sentencing law—specifically, the First Step Act's nonretroactive amendments to § 841(b)'s recidivist enhancements, § 401, 132 Stat 5220—"do not factor into the extraordinary and compelling analysis." *McCall*, 56 F.4th at 1066.

**B.** **Because Subsection (b)(6) Is Invalid, the Question of Whether Nonretroactive Changes in Law Have Produced a "Grossly Disparate" Sentence Is Immaterial.**

As explained in **Section II.A**, Subsection (b)(6) is invalid and is therefore inapplicable to the defendant. Accordingly, the issue of whether the defendant's mandatory life sentence is "grossly disparate" to the sentence he would receive for the same offense today is immaterial.

28

The defendant claims that his mandatory life sentence on Count One is "grossly disparate" to the sentence he believes he would receive for the same offense today. (Motion, DE 650, Page ID# 7658, 7667-68). The defendant arrives at this conclusion by correctly noting that, in the aftermath of the First Step Act's non-retroactive changes to 21 U.S.C. § 841(b)'s recidivist enhancement, the mandatory-minimum sentence for a defendant convicted of a 21 U.S.C. § 846 offense involving at least 5 kilograms or more of cocaine (with no qualifying drug predicates) is now 10 years, as opposed to life. (*Id.* at Page ID# 7667-7668); § 401(a)(2), 132 Stat. 5220. The defendant then goes on to explain that, given the Act's changes to the meaning of the term "serious drug felony," § 401(a)(1), 132 Stat. 5220, if sentenced today, neither of his prior drug felonies would have counted as "serious drug felony" convictions, meaning that he would be subject to a mandatory-minimum sentence of only 10 years. (Motion, DE 650, Page ID# 7658, 7667-68); § 401(a)(2), 132 Stat. 5220.

If the Court finds Subsection (b)(6) abrogates the Sixth Circuit's en banc decision in *McCall*, it should take into consideration the defendant must serve a consecutive sentence of 60 months on Count Four before release.

**C.** **The Remaining Reasons Offered by the Defendant Are Not Extraordinary and Compelling.**

The defendant also argues that he can establish extraordinary and compelling reasons for relief under U.S.S.G. § 1B1.13's catch-all provision for "Other Reasons."[7] (Motion, DE 650, Page I.D. #7668). Specifically, the defendant claims that his "superlative" rehabilitation, the lesser

---

[7] Section 1B1.13(b)(5) of the Sentencing Guidelines provides:

> Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

sentences of his co-defendants, and changes in DOJ charging policy "amount to extraordinary and compelling 'other reasons' to reduce his life sentence." (*Id.* at Page I.D. #7668-73). This argument is entirely without merit.

First, consider the lesser sentences of the defendant's co-conspirators. (*Id.* at #7671). As the Sixth Circuit has explained, sentencing disparities between co-defendants is a fact that is necessarily known at sentencing. *Hunter*, 12 F.4th at 569-70 (6th Cir. 2021). Because § 3582(c)(1)'s text and structure show that the statute focuses on "post-sentencing factual developments," facts—like sentencing disparities—that "existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *Id.* at 570. As previously noted, the Sentencing Commission's amendments to § 1B1.13—including § 1B1.13(e)—cannot abrogate the Sixth Circuit's interpretation of § 3582(c)(1)(A). *Brand X Internet Servs.*, 545 U.S. at 984 (2005). Moreover, as a matter of logic, a fact known at sentencing is not of "similar gravity" to the reasons for early release described in § 1B1.13(b)(1-4).

Next, the defendant invokes DOJ charging policy—specifically, the Garland memo. (Motion, DE 650, Page ID# 7671-73). The defendant argues that the use of § 851 enhancement in this case represented a trial tax, and his life sentence lacks any legitimate penological justification in spite of his two prior convictions for drug trafficking offenses. (*Id.* at PageID# 7671). Can an internal DOJ guidance documents for prosecutors contribute to the extraordinary and compelling reason analysis? The memo itself provides the answer, as it includes language stating that the policy is "not intended to create a substantive or procedural right or benefit, enforceable at law, and may not be relied upon by a party to litigation with the United States." (*See, e.g.*, Motion, DE 650-6, Page ID# 7703 n.4 (citing *United States v. Caceres*, 440 U.S. 741 (1979)). And moreover, a finding that DOJ policy changes could contribute to the extraordinary and compelling analysis

30

for a sentence reduction would all but destroy the principle of finality that undergirds federal criminal law. *McCall*, 56 F.4th at 1055. Indeed, under the defendant's interpretation of § 3582(c)(1)(A), no sentence would ever be final since an internal DOJ policy change could, when combined with the defendant's rehabilitation, amount to an extraordinary and compelling reason for a sentence reduction. (Motion, DE 650, Page ID# 7671-73). This atextual and illogical interpretation of § 3582(c)(1)(A) cannot be the law.

That leaves the defendant's rehabilitation. (*Id.* at Page I.D. #12054). The United States has no reason to doubt the defendant's "superlative" rehabilitation over the past 14.8 years, and it commends him for it. However, because Congress has mandated that the "[r]rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for release, 28 U.S.C. § 994(t), the defendant's commendable rehabilitation does not amount to an extraordinary and compelling reason for a sentence reduction.

### D. Conclusion

In denying the defendant's previous motion for compassionate release, the Court quoted the Sixth Circuit's opinion in *McCall*: "Nonretroactive legal developments do not factor into the extraordinary and compelling analysis. Full stop." *McCall*, 56 F.4th 1048, 1066 (6th Cir. 2022). (Order, DE 645, Page I.D.# 7569). Because the Sentencing Commission's contrary subsequent interpretation of the meaning of "extraordinary and compelling reasons" does nothing to change this result, the defendant cannot establish extraordinary and compelling reasons for release. The defendant's motion should therefore be denied.

### III. Danger to the Safety of Any Other Person or to the Community.

A defendant may obtain early release under 18 U.S.C. § 3582(c)(1)(A), if the Court determines that he "is not a danger to the safety of any other person or to the community, as

provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Here, the defendant may well remain a danger to the community, if his sentence is reduced to time served. The nature and circumstances of the defendant's offenses—a large-scale drug conspiracy, maintaining a drug premises for maintaining a drug premises to manufacture controlled substances, and possession of firearms in furtherance of drug trafficking—are serious and dangerous, and the defendant's criminal history is significant, as evidenced by his 8 criminal history points and his status as a Career Offender. (PSR at ¶¶ 11-26, 37, 47, 48). The defendant's PSR also indicates that he previously violated conditions of probation, (*id.* at ¶¶ 42, 44, 47), which does not bode well for his compliance with conditions of supervised release.

Patterson would pose a danger to public safety if released. Patterson has been dealing cocaine since at least 1994 based on his conviction for possession of cocaine for resale. (PSR, ¶ 42). Even after his conviction for possession of cocaine for resale, Patterson continued to sell cocaine while he was on probation for the charge. (PSR, ¶ 44). His drug dealing only seems to have been interrupted by his periods of incarceration.

In the course of this cocaine distribution conspiracy, Patterson possessed weapons even though he was a prohibited possessor by virtue of his prior felony convictions. (PSR, ¶ 23). Patterson was subsequently convicted of possession of a firearm in furtherance of drug trafficking and felon in possession of a firearm based on the severed Counts Four and Five. (Doc. No. 540).

## IV. The Section 3553(a) Factors Independently Preclude the Defendant's Requested Relief.

If the Court determines that the defendant has established extraordinary and compelling reasons for early release, the United States respectfully submits that a reduction to time served— or, by the defendant's own calculation, about 14.8 years, (Motion, DE 650, Page I.D. #7677), is not warranted under the 18 U.S.C. § 3553(a) factors. The defendant's offense conduct—namely,

32

his involvement in a large-scale cocaine conspiracy—was, by any measure, serious and dangerous, and his criminal history is significant. (PSR at ¶¶ 37, 42, 44, 47-48).

When Patterson was charged in this case, he was under two criminal justice sentences for possession of cocaine for resale and possession with intent to sell cocaine under .5 grams. (PSR, ¶¶ 42, 44, 47). Periods of incarceration following the revocation of his probation did not deter Patterson from committing new crimes by possessing and selling cocaine. (PSR, ¶¶ 42, 44). Patterson was thirty-six when sentenced in this case. (PSR, p. 2). He committed his first criminal offense at age eighteen. (PSR, ¶ 41).

Patterson was an organizer and leader in the cocaine trafficking organization in this case. (PSR, ¶ 25). Patterson directed couriers to transport drugs and drug proceeds to and from California and Tennessee and purchase supplies for the conspiracy. (*Id*.) He paid these couriers in cash and quantities of cocaine. (*Id*.) Patterson purchased and controlled the vehicles that were used to transport the drugs and drug proceeds. (*Id*.) Patterson was conservatively responsible for 150 kilograms of cocaine during the conspiracy. (*Id*.) He continued to conspire to distribute cocaine even after he was present when law enforcement executed a search warrant on a co-conspirator's residence. (PSR, ¶ 22).

Accordingly, if the Court decides to grant the defendant some form of relief, the United States submits that any consideration of a reduced sentence should be guided by the serious nature of the defendant's offense, his significant criminal history, and the fact that the non-retroactive changes in law upon which the defendant relies have nothing to do with the defendant's 60-month consecutive sentence for possession of a firearm in furtherance of drug trafficking on Count Four.

33

In sum, even if the Court finds that the defendant has established extraordinary and compelling reasons for a sentence reduction, a reduction to a time-served sentence is not warranted under the 18 U.S.C. § 3553(a) factors.

## CONCLUSION

For the aforementioned reasons, the United States respectfully requests that the Court deny the defendant's motion for compassionate release.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney

By:     */s/ Monica R. Morrison*
MONICA R. MORRISON
Assistant U. S. Attorney
719 Church Street, Suite 3300
Nashville, Tennessee 37203
Telephone: 615-736-5151

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and exact copy of the foregoing document has been served on the defendant's counsel through this Court's CM/ECF system.

*/s/ Monica R. Morrison*
MONICA R. MORRISON
Assistant United States Attorney

34