UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| | **)** | **Case No. 3:09-CR-00047-1** |
| **v.** | **)** | **CHIEF JUDGE CRENSHAW** |
| | **)** | |
| **ADRIAN DEWAYNE PATTERSON** | **)** | |

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO HIS MOTION FOR A SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)

Adrian Patterson replies to the government's response to his motion to reduce his life sentence based on extraordinary and compelling reasons. In its response, the government never claims there is *any* penological justification for Patterson serving a life sentence. And, although the government responds at length to Patterson's argument for eligibility under U.S.S.G. § 1B1.13(b)(6), it has very little to say about his eligibility under § 1B1.13(b)(5). In this reply, Patterson will address § 1B1.13(b)(5) first, which is an independent ground for eligibility, and second he will address the more complex legal issue presented by § 1B1.13(b)(6). Finally, he will briefly address the § 3553(a) factors, which the government seems to concede fail to justify a sentence as long as life.

**1. Patterson is eligible for relief for "other reasons" pursuant to § 1B1.13(b)(5).**

As the gatekeeper for 18 U.S.C. § 3582(c)(1) relief, the Bureau of Prisons (BOP) has long had the authority to find a prisoner eligible for relief based on "other reasons" that were not otherwise specified by the policy statement. U.S.S.G. § 1B1.13 cmt. n.1(D) (2016). By giving that same gatekeeper role to the courts in 2018, Congress has given the courts the same authority to determine what "other reasons" amount to grounds for § 3582(c)(1) eligibility.

The government does not deny that fact. Rather, it argues the Court should disregard each of Patterson's three reasons which he argues collectively amount to sufficient "other reason" to find him eligible. (Gov't Response, R.654, PageID# 7808-10.) Patterson responds to the government's critique of each reason.

A.      **The DOJ has now rejected using § 851 to impose a trial tax.**

As the government implicitly acknowledges, Attorney General Garland has renounced the DOJ's former use of § 851 enhancements to procure guilty pleas and, failing that, to impose a "trial tax" that was sometimes unconscionably harsh. *United States v. Kupa*, 976 F. Supp. 2d 417, 419-20, 436, 448-49, 460 (E.D.N.Y. 2013) (describing the former practice). Further, the government implicitly acknowledges that Patterson fell victim to that now-renounced practice as the prosecutor pursued mandatory life after having offered to settle the entire case for 17 years. Patterson incurred a life-sentence trial tax that the DOJ would not impose today.

The government makes two arguments against considering this fact. *First,* it attacks a strawman, asking simply if the Garland memo "confer[s] any enforceable rights for a defendant or litigant against the United States?" (Gov't Response, R.654, PageID# 7809.) The answer to that question is "no" since the memo expressly bars direct enforceability. Thus, a defendant cannot move to dismiss a § 851 notice on the ground that the notice is unauthorized by the Garland memo. But notwithstanding that bar against direct enforceability, the Garland memo does exist and it does have effect. Even the case cited by the Garland memo regarding nonenforceability says that "'[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.'" *United States v. Caceres*, 440 U.S. 741, 751 n.14 (1979) (quoting *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)). Directly enforceable or not, the Garland memo did in fact renounce the DOJ's former § 851 practice, and it is affecting

2

sentencing today. The Court can recognize that historical fact—that changed circumstance—just as it can recognize, for example, that a prisoner has become terminally ill.

*Second*, the government says if the Court considers this policy change in a § 3582(c)(1) analysis it would "all but destroy the principle of finality that undergirds federal criminal law," as if considering a policy change would give courts license to reduce sentences at the drop of a hat. (Gov't Response, R.654, PageID# 7810.) That is an overstatement. When assessing "other reasons" the Court looks at the whole "combination of circumstances" presented by the defendant's situation. U.S.S.G. § 1B1.13(b)(5). Here, that combination of circumstances is extraordinarily compelling. That is so because three things are true about Patterson's case:

1.  Patterson's § 851 trial tax was extreme, a life sentence. As explained already, life sentences are very rare, especially for nonviolent drug trafficking. Thus, Patterson presents the most extreme example of this kind of case.

2.  The DOJ's § 851 trial tax policy was the only reason Patterson got this life sentence. Had he accepted the plea bargain, it appears his total sentence would have been 17 years.

3.  Today, the government does not even try to argue Patterson might possibly deserve a life sentence. (Gov't Response, R.654, PageID# 7811-13 (arguing only that a sentence of "time served" would be too short to satisfy § 3553(a).)

In light of these three facts, it is perfectly clear that *the only reason* Patterson is serving *a life sentence* is the former § 851 trial-tax policy, and that today that policy has been renounced due to the institutional realization that, as former Judge Gleeson set forth, the old way of doing things sometimes generated sentences that "should instill shame in all of us." *Kupa*, 976 F. Supp. 2d at 449, 460. The government does not deny any of this. This extraordinary set of

3

circumstances makes the change in the trial-tax policy highly relevant to a § 3582(c)(1) assessment.

**B.      Patterson, with his life sentence, remains in prison while more or equally culpable co-conspirators have been released.**

The government does not deny that there is a gross disparity between Patterson's life sentence and both (1) the 48- and 70-month sentences that much-more-culpable-yet-cooperating codefendants received (Bassim Fardos and Robert Bell), and (2) the 20-year sentence that the similarly-situated John Banks received. There is no valid justification for Patterson being the only conspirator condemned to life in prison.

The government does point out that, according to pre-*McCall* precedent, "facts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *United States v. Hunter*, 12 F.4th 555, 570 (6th Cir. 2021). (*See* Gov't Response, R.654, PageID# 7809 (citing *Hunter*).) Although disparity with the codefendants' sentences normally is known to exist at the time of sentencing, here the extent of that disparity was not fully known, since John Banks has been released early to the halfway house, making the unfairness of Patterson's sentence even starker.

Plus, *Hunter* is in tension with the Sentencing Commission's view of "extraordinary and compelling reasons" as stated in its new policy statement. That policy statement says "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction" under § 3582(c)(1). U.S.S.G. § 1B1.13(e). And the example used by the Commission in its Reason for Amendment is clearly contrary to *Hunter* since one eligibility consideration was the defendant's extreme youth at the time of the offense. (*See* Def. Mot., R.650, PageID# 7669 (quoting Reason for

4

Amendment).) For the same reasons given *infra* pp. 7 to 10, the new policy statement supplants *Hunter* on this point.

Fardos and Bell amassed fortunes from trafficking drugs; Patterson and Banks, who played essentially the same role, were just scraping by. It is patently unjust that Patterson got a life sentence and the other three are already on the streets. This fact exacerbates the stark injustice already described above, and it should be considered a compelling factor.

### C. Patterson's conduct in prison has been completely admirable.

The government says it "has no reason to doubt" that Patterson's rehabilitation has been superlative. (Gov't Resp., R.654, PageID# 7810.) Indeed, Patterson has proven that fact by his consistent good conduct year after year, as well as his earnest efforts to be a good father from prison. Responding to this fact, the government merely points out that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a reduction. 28 U.S.C. § 994(t). But it is also true that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances" in determining "whether" to reduce his sentence. U.S.S.G. § 1B1.13(d). *See e.g., United States v. Hebel*, No. 11-cr-20320-1, 2021 U.S. Dist. LEXIS 245230, *6 (E.D. Mich. Dec. 23, 2021) ("[W]hen combined with the above, Defendant's excellent rehabilitation supports a finding of extraordinary and compelling reasons for her release."); *United States v. McClurg*, No. 3:12-cr-112-TAV-JEM-1, 2022 U.S. Dist. LEXIS 194139, *15 (E.D. Tenn. Oct. 25, 2022) (stating rehabilitation "can be considered in combination with other circumstances" to find eligibility for a reduction). Thus, Patterson's superlative rehabilitation is a significant development that can materially contribute to finding him eligible for relief.

5

**D.      The combination of these circumstances amounts to an "other reason."**

The touchstone is "gravity." U.S.S.G. § 1B1.13(b)(5). Do these circumstances amount to a reason "similar in gravity"—even if perhaps dissimilar in "nature"—to the enumerated grounds for § 3582(c)(1) relief?  U.S.S.G. App. C, Amend. 814, Reason for Amendment (Nov 1, 2023). Although the government suggests these reasons are not similar in gravity, it really talks only about their nature, not their gravity. (R.654, PageID# 7809.)

Gravity should be assessed as follows. According to the government, the "archetyp[ical]" example of sufficiently grave circumstances is when an inmate—even one sentenced to life imprisonment[1]—becomes terminally ill. (*Id.* PageID# 7802.) Why should that changed circumstance be a sufficiently grave reason for a reduction even though a terminal diagnosis is fairly common in the course of an entire lifetime? Because the changed circumstance makes it perfectly clear that service of the complete sentence will serve no legitimate penological purpose, but instead is needlessly cruel. *See generally Graham v. Florida*, 560 U.S. 48, 71 (2010) (discussing criteria for finding a sentence unconstitutionally cruel and stating a "sentence lacking any legitimate penological justification is by its nature disproportionate to the offense."). Likewise, here the changed circumstances discussed above have made it perfectly clear Patterson's life sentence serves no legitimate penological purpose. Today, now that imposing an § 851 trial tax of "life" is unacceptable and now that Patterson has proven himself a model prisoner for so many years in a row, it is perfectly clear his life sentence is needlessly cruel. Section 3582(c)(1)'s safety valve allows this Court to reduce it.

---

[1] *See, e.g., United States v. Walls*, No. 92-80236, 2022 U.S. Dist. LEXIS 29257, *3 (E.D. Mich. Feb. 23, 2018) (government moved for § 3582(c)(1) reduction for 75-year-old defendant who had served 22 years of a life sentence because he was suffering from Parkinson's disease, heart disease, sciatica, and osteoarthritis).

6

## II.     Patterson is also eligible for relief under § 1B1.13(b)(6).

With respect to § 1B1.13(b)(6)'s "unusually long sentence" provision, the government accepts that Congress "delegated" to the Sentencing Commission the task of saying, through a policy statement, "what qualifie[s] as 'extraordinary and compelling.'" *United States v. McCall*, 56 F.4th 1048, 1053 (6th Cir. 2022) (en banc). The government also accepts that the Commission's policy statement at § 1B1.13 has the binding force of law and that is entitled to substantial deference. But the government basically asserts two things contrary to Patterson's position: (1) that *McCall* foreclosed subsection (b)(6); and, (2) even if not foreclosed by *McCall*, subsection (b)(6) is such an unreasonable implementation of the "extraordinary and compelling reasons" clause that it is invalid. Patterson addresses those assertions in turn.

### A.     *McCall* has not foreclosed § 1B1.13(b)(6).

Granted, in *McCall* the en banc Sixth Circuit held, based on its interpretation of § 3582(c)(1), that "[n]onretroactive legal developments, considered alone or together with other factors, cannot amount to an 'extraordinary and compelling reason' for a sentence reduction." 56 F.4th at 1065-66. According to the government, the Sentencing Commission lacks the "[a]uthority to [o]verride" that interpretation of § 3582(c)(1). (Gov't Response, R.654, PageID# 7793.) To support its argument, it repeatedly cites *Nat'l Cable & Telecomms Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005), which says "a court's prior interpretation of a statute [can] override an agency's interpretation only if the relevant court decision held the statute unambiguous." *Id.* at 984. There are two main flaws in the government's argument.

First, the most obvious flaw is that *McCall* did not "h[o]ld the statute unambiguous." *Id.* When *McCall* interpreted § 3582(c)(1), there was no binding policy statement demanding deference, and so the *McCall* court acknowledged courts like it were free to "define

'extraordinary and compelling' without reference to the Sentencing Commission's guidance." 56 F.4th 1054. Because the *McCall* court was not required to determine the unambiguous meaning of § 3582(c)(1) to determine the outcome of the case, its holding did not determine § 3582(c)(1)'s *unambiguous* meaning. *See United States v. McMurray*, 653 F.3d 367, 375 (6th Cir. 2011)[2] ("Because the statement in *Benton* . . . . was not necessary to the outcome in that case, it is dicta that is not binding."). That is so even though *McCall* said it wasn't necessary to consult legislative history since there was "no such ambiguity" in § 3582(c)(1) because *McCall* did in fact consult the legislative history and because its passing conclusion about ambiguity had no effect on the outcome. *Id.*; *see also Wright v. Spaulding*, 939 F.3d 695, 701 (6th Cir. 2019) ("[A] conclusion that does *nothing* to determine the outcome is dictum and has no binding force.") (emphasis in original)).

Moreover, the *McCall* court itself recognized it was not deciding whether the Sentencing Commission's anticipated policy statement on "extraordinary and compelling reasons" would be valid if contrary to the court's own interpretation. *McCall*, 56 F.4th at 1055 n.3 (saying that "[w]hether the Commission could issue a new policy statement that describes 'extraordinary and compelling reasons' in a way that is inconsistent with our interpretation of the statute's language is a question that we need not resolve" presently). But for a court's conclusion to have binding force, "it must be clear that the court considered the issue and consciously reached a conclusion about it." *see Wright*, 939 F.3d at 701. Because the *McCall* court consciously *stopped short* of deciding the question at issue today, it cannot be deemed to amount to a holding regarding the

---

[2] This case was overruled on other grounds by *United States v. Verwiebe*, 874 F.3d 258, 262-64 (6th Cir. 2017), but later vindicated by *Borden v. United States*, 141 S. Ct. 1817 (2021), which overruled *Verwiebe.*

unambiguous meaning of § 3582(c)(1). And, thus, *McCall*'s "prior interpretation of [the] statute" cannot "override [the] agency's interpretation" of it. *Brand X*, 545 U.S. at 984.

*Second*, the government's treatment of administrative-law authorities is inconsistent. The government acknowledges that this case is *not* governed by *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984) because Congress expressly, rather than "only implicitly," delegated to the Commission with the power to say what amounts to an "extraordinary and compelling reason" under § 3582(c)(1). (Gov't Resp., R.654, PageID# 7791.) Yet it repeatedly cites *Chevron* cases as if they governed, as it cites *Brand X, supra,* and *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44 (2011), both of which are *Chevron* cases.[3] The governing standard comes not from *Chevron* but from *Batterton v. Francis*, 432 U.S. 416 (1977), which the government seems to admit. (Gov't Response, R.654, PageID# 7792 (citing *Batterton*).) *Batterton* says the following about deference when an agency is expressly delegated the power to say what a statute means:

> Ordinarily, administrative interpretations of statutory terms are given important but not controlling significance. . . . [But here] Congress in § 407(a) expressly *delegated* to the Secretary the power to prescribe standards for determining what constitutes "unemployment" for purposes of AFDC-UF eligibility. In a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term. In exercising that responsibility, the Secretary adopts regulations with legislative effect. A reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner.

---

[3] The government does cite two non-*Chevron* cases involving the Sentencing Commission, but both are plainly inapposite. In *United States v. LaBonte*, 529 U.S. 751 (1997), the Commission's guideline was held invalid because the Commission violated an express direction from Congress in its enabling statute, 28 U.S.C. § 994(h). Here, the Commission is certainly acting consistently with the enabling statute, § 994(t), since that provision tells it to issue policy statements like § 1B1.13. In *Neal v. United States*, 516 U.S. 284 (1996), the Commission issued a guideline that operated independently of the statutory provision in question, and the Commission did not even intend for its guideline to displace the courts' interpretation of the statute. *Id.* at 293. Only the litigant tried (erroneously) to give the guideline such significance. *Id.*

The regulation at issue in this case is therefore entitled to more than mere deference or weight. It can be set aside only if the Secretary exceeded his statutory authority or if the regulation is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

*Batterton*, 432 U.S. at 425-26 (emphasis in original).

Here, the Sentencing Commission—not the courts—has "primary responsibility" for interpreting § 3582(c)(1). *Id.* at 425. The Sixth Circuit has not held that the Commission's exercise of that primarily responsibility was arbitrary or capricious or otherwise unlawful. Nor did it purport to apply a *Batterton* standard. The validity of the Commission's interpretation of § 3582(c)(1) presents an open question for the courts. And, as long as the Commission's interpretation of the "extraordinary and compelling reasons" is within the realm of reason, it is a valid exercise of policy making power, which the courts must accept.

**B.      Section 1B1.13(b)(6) is a valid exercise of the Sentencing Commission's authority.**

The government claims that § 1B1.13(b)(6) does not accord with § 3582(c)(1)(A), based on the notion that the words "extraordinary and compelling" are incapable of encompassing circumstances that include a legal change—as a matter of § 3582(c)(1)(A)'s plain text, structure, and purpose. But § 3582(c)(1)(A)'s text ("extraordinary and compelling") is broad and inclusive. And § 1B1.13(b)(6) is entirely consistent not only with this text but also with the statute's structure and context: Congress enacted § 3582(c)(1)(A) to serve as a safety valve within the Sentencing Reform Act, and delegated to the Sentencing Commission the task of determining the sorts of circumstances to which it could apply. Further, § 1B1.13(b)(6) also serves both the broader purposes of the Sentencing Reform Act and the statutorily defined purposes and duties of the Sentencing Commission.

## 1. Section 1B1.13(b)(6) does not conflict with § 3582(c)(1)(A)'s text.

The "preeminent canon of statutory interpretation" holds that "the legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (cleaned up). Section 3582(c)(1)(A)'s text uses broad, adaptable language for its threshold standard for sentence reduction: "extraordinary and compelling reasons." It also requires that any reduction be "consistent with applicable policy statements issued by the Sentencing Commission."

In the same Act that created § 3582(c)(1)(A), Congress directed the Commission to promulgate "policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in 3582(c)." 28 U.S.C. § 994(a)(2)(C). And Congress instructed the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The only limitation Congress placed on the Commission is that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

Putting these together, the text of § 3582(c)(1)(A) and 28 U.S.C. § 994 place no categorical prohibitions on the Commission's description of what should be considered "extraordinary and compelling," other than that "rehabilitation . . . alone" cannot justify a sentence reduction. The Commission expressly incorporated this prohibition into its policy statement, ensuring that courts must respect Congress' limitation. § 1B1.13(d).

### a. Nothing about the words "extraordinary and compelling" excludes circumstances that are related to legal changes.

"Extraordinary" and "compelling" afford the Commission significant discretion in setting policy. These terms are not unbounded; using the government's cited definitions, they encompass only circumstances that are both "most unusual," "far from common," or "having

little or no precedent," and also that compel—force, impel, drive—a court to reduce the sentence. But nothing about "extraordinary and compelling" limits the circumstances that § 3582(c)(1)(A) covers to the sorts of health- and age-related matters that would be covered by a traditional "compassionate release" statute. U.S.S.G. App. C, Amend. 814, Reason for Amendment (Nov 1, 2023) (explaining that § 3582(c)(1)(A) has come to be known as "compassionate release," although that phrase appears nowhere in the SRA). And just the same, nothing about those terms excludes, as a category, legal changes as they might relate to a constellation of circumstances warranting a sentence reduction. *See Kemp v. United States*, 142 S. Ct. 1856, 1865 (2022) (Sotomayor, J., concurring) (explaining in the Fed. R. Civ. P. 60(b)(6) context that "extraordinary circumstances" include "a change in controlling law").

The government argues that a legal change that applies only prospectively, like section 401 of the First Step Act, is incapable of contributing to "extraordinary and compelling reasons" for a sentence reduction because prospective application of new laws is the *norm*. (R.654, PageID# 7796.) But no one claims that all—or most or even a significant percentage of— circumstances related to legal changes could be characterized as "extraordinary and compelling." The Third Circuit was not wrong when it said that it was "conventional" for Congress to apply new penalties only to those not yet sentenced. (*See* R.654, PageID# 7798 (citing *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021)).)

Still, *some* legal changes *can be* "extraordinary," and circumstances relating to them *can be* "compelling." Beyond Justice Sotomayor's recent recognition in another context that a "change in controlling law" could be "extraordinary" (cited above), consider this: The Supreme Court interprets the Constitution regularly, and has for generations. So, theoretically, one could say that there is nothing "extraordinary" about a new opinion interpreting the Constitution. But

one could not seriously argue that the Court's decision in *Brown v. Board of Education*, 347 U.S. 483 (1954), was not extraordinary, or that the circumstances of some individuals whose lives were touched by *Brown* were not compelling. Again, the terms "extraordinary" and "compelling," as a matter of plain English, do not exclude *categories*; they require an assessment of particular *circumstances*.

Indeed, at least four courts of appeal have held in the § 3582(c)(1)(A) context that "extraordinary and compelling" is capable of encompassing some circumstances relating to some legal changes. *United States v. Trenkler,* 47 F.4th 42 (1st Cir. 2022); *United States v. McCoy,* 981 F.3d 271 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035 (10th Cir. 2021). This number is arguably five: the Second Circuit in *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020), held that district courts could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," and has not imposed any categorical prohibitions. *United States v. Watts*, 2023 WL 35029, *7 (E.D.N.Y Jan.4, 2023) (collecting cases within Second Circuit reducing sentences where the defendant's original sentence would be lower under First Step Act amendments). These opinions came out of the period after Congress authorized defendants to file their own § 3582(c)(1)(A) motions, but before the Sentencing Commission had amended § 1B1.13 to account for that, when every circuit but the Eleventh had held that the old § 1B1.13 did not apply to defendant-filed motions. *See United States v. Bryant*, 996 F.3d 1243, 1259–62 (11th Cir. 2021). During this period, circuit courts provided their own guidance regarding the phrase "extraordinary and compelling."

As discussed above (Section II.A), the government emphasizes that in *McCall* the Sixth Circuit held that legal changes could *not* factor into the "extraordinary and compelling" analysis.

But for the reasons given above, *McCall* did not decide the present question. Accordingly, notwithstanding *McCall*, the Sixth Circuit, like the other circuits that reached a similar conclusion, will have to reexamine its position in light of § 1B1.13(b)(6). *See United States v. Stewart*, ___ F.4th ___, 2023 WL 7509457, at *2 n.2 (3d Cir. Nov. 14, 2023) (noting that the court may consider the effect of § 1B1.13(b)(6) "on the validity of *Andrews*" in an appropriate case); *United States v. Wilson*, 77 F.4th 837, 841–42 (D.C. Cir. 2023) (explaining that it was unknown whether a defendant's legal-change-related claim "would constitute extraordinary and compelling reasons under the not-yet-effective guidelines," notwithstanding that court's pre-amendment caselaw); *United States v. Williams*, 65 F.4th 343, 347 (7th Cir. 2023) (explaining that that court had erected categorical restrictions in the § 3582(c)(1)(A) context when there was no policy statement, but other courts had refused to erect categorical restrictions, so "the issue is teed up, and either *the Commission* or the [Supreme] Court (we hope) will address it soon") (emphasis added).

Likewise, the pre-1B1.1.13(b)(6) opinions holding that legal changes *could be* considered (*e.g.*, *McCoy*, *Chen*) are also subject to change, because the new § 1B1.13(b)(6) is narrower than what those circuit courts previously permitted—although there is no doubt that those circuits would hold that § 1B1.13(b)(6) is valid. But the fact that at least four—really, five—circuit courts have interpreted "extraordinary and compelling" to permit consideration of some legal changes, in some circumstances, proves wrong the government's claim that those terms are unambiguously incapable of being read in this way.

**b.    The courts cannot graft a non-textual categorical exclusion onto § 3582(c)(1)(A).**

There is no other basis for reading categorical prohibitions into § 3582(c)(1)(A), beyond the "rehabilitation alone" prohibition. As the Supreme Court held just last year: "It is only when

Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained." *Concepcion v. United States*, 142 S. Ct. 2389, 2396 (2022). As the Ninth Circuit reasoned in *Chen*, "[s]ince Congress has not legislated to create a third limitation on extraordinary and compelling reasons prohibiting district courts from considering non-retroactive changes in sentencing law," courts should not do so on their own. 48 F.4th at 1099; *see also Concepcion*, 142 S. Ct. at 2402 ("Drawing meaning from silence is particularly inappropriate in the sentencing context, for Congress has shown that it knows how to direct sentencing practices in express terms.") (internal quotation marks and citation omitted).

> **c.** **The First Step Act's once-in-a-generation reductions in sentencing ranges are capable of producing the sorts of disparities that, in individual cases, can comfortably fit within the terms "extraordinary and compelling."**

First Step Act § 401 is precisely the sort of legal change capable of exposing a gross disparity and, in appropriate cases, can be among the circumstances serving as "extraordinary and compelling reasons" to reduce a sentence. The Sentencing Commission has recognized as much. *See* U.S.S.G. App. C, Amend. 814, Reason for Amendment (Nov 1, 2023). Section 401 of the First Step Act (along with its sister provision, § 403) is anything but ordinary: the Senate Judiciary Committee called the First Step Act's reforms "once-in-a-generation." *See* U.S. Senate Comm. on the Judiciary, *Senate Passes Landmark Criminal Justice Reform* (Dec. 18, 2018).[4] Indeed, there hasn't been a federal statute enacted within the past century that reduced sentencing ranges as dramatically as the First Step Act.

---

[4] *Available at* https://www.judiciary.senate.gov/press/rep/releases/senate-passes-landmark-criminal-justice-reform.

What's more, the amended §1B1.13(b)(6) does not apply to all cases affected by even these profound legal changes. Section 1B1.13(b)(6) applies only to cases that are necessarily unusual—where the defendant is serving an "unusually long sentence"—and the defendant can show there is a "gross disparity." And that's not all: the defendant also must have already served at least 10 years in prison[5] and must persuade the sentencing court that his particular case is "extraordinary and compelling" based on "full consideration of the defendant's individualized circumstances." The government's notion that the words "extraordinary" and "compelling" are not capable of encompassing a person who meets this standard—such that § 1B1.13(b)(6) is invalid on its face—is mistaken.

### 2. Section 3582(c)(1)(A)'s context reinforces the Sentencing Commission's authority to promulgate § 1B1.13(b)(6).

The government next argues that § 3582(c)(1)(A)'s "context" confirms that "extraordinary and compelling" cannot encompass intervening changes in law. (R.654, PageID# 7799-7800.) To the contrary, the most essential context for that standard is that Congress expressly delegated to the Sentencing Commission, not to the government or the courts, the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." § 994(t). With § 1B1.13, The Commission has fulfilled its duty under § 994(t) to describe what may be considered "extraordinary and compelling," including by providing that some unusual circumstances that relate, in part, to legal changes can meet this standard. Under §§ 3582(c)(1)(A) and 994(t), this is now the law.

---

[5] Only 11.8% of federal defendants even get a prison sentence of 10 years or more. *See* https://ida.ussc.gov/analytics/saw.dll?Dashboard.

In arguing that context supports its interpretation that changes in law can never form any part of an "extraordinary and compelling" finding, the government entirely ignores this most essential context and focuses, instead, on 18 U.S.C. § 3582(c)**(2)** and 28 U.S.C. § 2255. Its argument appears to be that Congress must have meant for "extraordinary and compelling" not to include changes in law, since otherwise it would render § 3582(c)(2) (the provision that governs retroactive guideline amendments) irrelevant and it would conflict with § 2255 (the federal habeas statute).

As to § 3582(c)(2), there is an obvious distinction between § 3582(c)(1)(A) and § 3582(c)(2) that prevents the former from making the latter irrelevant: the former requires that circumstances be extraordinary and compelling, while the latter does not. That is, with (c)(1)(A), Congress authorized the Sentencing Commission to deem only extraordinary circumstances to be bases for sentence reduction, and only when they involve the sort of inequity that would compel a court to act. With (c)(2), Congress gave the Commission total control.

As discussed above, most legal changes—indeed, most circumstances *period*—could not be called "extraordinary" or "compelling." Circumstances related to guideline amendments are particularly unlikely to be "extraordinary and compelling," given that the Sentencing Guidelines are advisory and serve only to channel district courts' discretion within a mandatory statutory range. (This likely explains why the Sentencing Commission excepted its own amendments from § 1B1.13(b)(6), which the government criticizes.) With § 3582(c)(2), though, the Commission has the authority to decide that even modest guideline amendments should be retroactively applicable.

As to § 2255, a motion for judicial sentence modification is wholly distinct from a motion for relief from a conviction or sentence under § 2255. Section 3582(c)(1)(A) is a discretionary

safety valve: if the requirements imposed by § 3582(c)(1)(A) and § 1B1.13 are met, and after consideration of the § 3553(a) factors, a sentencing court has discretion to release the individual from custody, reduce the sentence, or deny the motion entirely. Section 3582(c)(1)(A) does not resolve claims of legal error, and it creates no entitlement to relief.

In contrast, habeas corpus, which for federal prisoners is codified at § 2255, is "a means of contesting the lawfulness of restraint and securing release." *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1969 (2020); *see also* 28 U.S.C. § 2255(a) (providing a mechanism for a federal prisoner to "claim[]the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack"). That is, if the prisoner proves that his continued detention is unlawful, he has a right to be released.

This is not to say that an individual defendant might not file a § 3582(c)(1)(A) motion that, in substance, is really a § 2255 motion. Then, too, an individual might file something captioned under § 3582(c)(1)(A) that is really a § 1983 lawsuit, or a motion for bail, or just about anything else. But in such a case, a court can dismiss the motion. And the present case is nothing like a § 2255 motion. Patterson is asking for discretionary relief based on his unusually long sentence, which involves a gross disparity resulting from a legal change that does not implicate the validity of his sentence, and where individualized circumstances relating to Patterson and the § 3553(a) factors impacting his case all militate toward relief. No part of this claim falls within the purview of § 2255 or any other mechanism for relief from unlawful detention.

### 3. Section 1B1.13(b)(6) serves the purposes of § 3582(c)(1)(A), the Sentencing Reform Act, and the Sentencing Commission itself.

Section 3582(c)(1)(A) was enacted in 1984, as part of the Sentencing Reform Act (SRA), which abolished parole and created a guideline-based sentencing scheme. The government claims that permitting courts to reduce sentences based on the constellation of circumstances required by §1B1.13(b)(6) would undermine the SRA. (R.654, PageID# 7801-02.) The government's idea seems to be that § 1B1.13(b)(6) runs counter to the SRA's core purposes because it functions too much like the old parole system and because it would create disparities that the SRA was designed to reduce. But judicial sentence reduction is nothing like parole; and the Commission, through § 1B1.13(b)(6), is seeking to *reduce* disparities. More fundamentally, the government's notion that § 1B1.13(b)(6) will not advance the SRA's objectives is quintessentially about *policy*. And Congress entrusted policy decisions in this arena to the Sentencing Commission, not the government or the courts.

Congress in 1984 would not have thought judicial sentence reductions, even if based in part on a change in law, were akin to the parole system it was abolishing. Under the old system, in most cases, a person became eligible for parole after serving one-third of the imposed sentence, with the parole decision in the hands of an executive parole board, focused almost exclusively on rehabilitation. Judicial sentence reduction is different: It keeps sentencing decisions in the judiciary (one of the overarching goals of the SRA) and has "deep historical roots" that are distinct from parole. Cecelia Klingele, *Changing the Sentence Without Hiding the Truth: Judicial Sentence Modification as a Promising Method of Early Release*, 52 Wm. & Mary L. Rev. 465, 498 (2010). Indeed, the Supreme Court approved of judicial sentence reduction nearly a century ago. *United States v. Benz*, 282 U.S. 304, 311 (1931).

Prior to the SRA, federal law had two judicial sentence-reduction provisions: the old Fed. R. Crim. P. 35 and 18 U.S.C. § 4205(g). These provisions operated differently, but each gave sentencing courts broad authority to reduce sentences, including—contrary to the government's suggestion—based on legal, rather than purely factual, circumstances.[6] Section 3582(c)(1)(A) is narrower than the old Rule 35 or § 4205(g): there must be "extraordinary and compelling" circumstances; any reduction must be consistent with Commission policy statements; and rehabilitation alone is not enough. But the point is, given the existence of these mechanisms for judicial reduction, the government is wrong to assume that Congress in 1984 would have thought judicial sentence reduction that could, as a matter of discretion, relate to certain legal changes, would in any way undermine its decision to abolish parole.

As for the government's concern about disparities, Congress entrusted to the Sentencing Commission the authority to formulate policy with respect to the appropriate use of sentence reductions to further the statutory purposes of sentencing, as set forth at 18 U.S.C. § 3553(a)(2). § 994(a)(2)(C). Congress would have also expected that those policies would be consistent with the goal of reducing unwarranted disparities, § 991(b)(1)(B), and with the Commission's purpose "to establish sentencing policies and practices for the Federal criminal justice system that . . . reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to

---

[6] *See, e.g., United States v. Vaughn*, 598 F.2d 336, 337 (4th Cir. 1979) (referring to the district court's grant of a Rule 35 motion based on the defendant's "positive change" post-sentencing); *United States v. Noriega*, 40 F. Supp. 2d 1378, 1380 (S.D. Fla. 1999) (reducing a sentence under Rule 35 based on the "nature of the confinement" and "the considerable disparity between Defendant's sentence and the sentences actually served by his co-conspirators"); *United States v. Diaco*, 457 F. Supp. 371, 376 (D.N.J. 1978) (reducing a sentence under § 4205(g) based on disparities among co-defendants); *see also United States v. Ellenbogen*, 390 F.2d 537, 543 (2d Cir. 1968) ("Rule 35 is intended to give every convicted defendant a second round before the sentencing judge, and at the same time, it affords the judge an opportunity to reconsider the sentence in the light of any further information about the defendant or the case which may have been presented to him in the interim.").

the criminal justice process," § 991(b)(1)(C). Section 1B1.13(b)(6) touches on all these objectives, in focusing on "unusually long sentences" where there are "gross disparities" and other changed circumstances that compel a court to reduce the sentence.

The government suggests that § 1B1.13(b)(6) will *increase* unwarranted disparities. (R.654, PageID# 7786.) This ignores reality: whatever differences in sentences might arise because a judge reduces a previously imposed "unusually long sentence"—after the defendant has served at least ten years of that sentence, because there is a "gross disparity," and after full consideration of the defendant's individualized circumstances—will be minimal compared to the disparity the government thinks must be locked-in. More to the point, though, this is a *policy debate*. The government's contentions do not inform the meaning of "extraordinary and compelling"; the government just thinks that § 1B1.13(b)(6) is bad policy. But Congress tasked the Sentencing Commission, not the government, with determining as a policy matter how courts should use § 3582(c)(1)(A) to further the statutory purposes of sentencing. § 994(a)(2)(C) & (t).

With § 1B1.13(b)(6), the Sentencing Commission discharged its duty with an eye toward the SRA's goals—and more particularly, the role of § 3582(c)(1)(A) within the larger Act. Section 1B1.13(b)(6)'s reference to "unusually long sentences" comes straight from S. Rep. No. 98-225, in which the SRA's Senate drafters explained that the proposed § 3582(c)(1)(A) would apply in "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances," including not only "cases of severe illness" but also "cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence." S. Rep. No. 98-225, at 55–56, 121; *see also* USSG App. C, Amend. 814, Reason for Amendment (Nov 1, 2023) (citing this language).

The government criticizes the Commission's citation to this Senate report, arguing that the Commission "elevate[d] that single sentence" (about cases in which non-medical circumstances justify the reduction of an unusually long sentence) above the SRA's "plain text and overarching purpose." (R.654, PageID# 7803.) But as discussed above, there's no text that restricts what can be "extraordinary and compelling" other than "rehabilitation alone." *See* 28 U.S.C. § 994(t). And while the larger SRA abolished parole and created a new guideline-based sentencing scheme, it is clear (with or without the Senate Report) that the specific purpose of § 3582(c)(1)(A) within the larger Act was to serve as a safety valve for post-sentencing inequities that might arise out of the new, as-yet-untested guideline sentencing scheme.

Beyond the SRA, the government appears to claim that the First Step Act's amendments to § 3582(c)(1)(A) support its position. The government suggests that because Congress's 2018 amendments to that section were procedural rather than substantive, this somehow locked-in the § 1B1.13 criteria that were in place before the amendment. But pre-First Step Act, § 1B1.13 granted courts more discretion than it does now: the Commission's description of "extraordinary and compelling reasons" included *literally any* "other reasons" that the Director of the Bureau of Prisons determined were extraordinary and compelling. U.S.S.G. § 1B1.13, n.1(D) (2018). True, the BOP neglected its authority to file sentence-reduction motions under the "other reasons" provision (and also, any other part of § 1B1.13). But the Commission has long recognized that § 3582(c)(1)(A) is capable of a broad, adaptable reach. Contrary to the government's suggestion, its "extraordinary and compelling" standard is no "mousehole." (R.654, PageID# 7804.)

Patterson is not claiming that the First Step Act bestowed new authority on the Sentencing Commission. But neither did it restrict the Commission's authority, established by the SRA, to describe what could be considered "extraordinary and compelling reasons," and to

review and revise its description, § 994(o), (t); to resolve circuit splits, § 994(o); to establish

policies and practices that promote the statutory purposes of sentencing, § 991(b)(1)(A); and to

reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to

the criminal justice process, § 994(b)(1)(C). That is what the Commission has done in

promulgating §1B1.13, including subsection (b)(6).

> **4.** **Nothing else invalidates § 1B1.13(b)(6) generally or precludes its application to a claim involving FSA § 401—not § 401 itself, not background principles relating to retroactivity, and not separation-of-powers principles.**

The government's arguments are generally couched in the language of textualism, aimed

at persuading this Court that the words "extraordinary and compelling" can never encompass

circumstances related to legal changes, in service of the government's claim that § 1B1.13(b)(6)

is invalid on its face. But several of the government's arguments aren't really about

§ 3582(c)(1)(A) or even about § 1B1.13(b)(6) in a general, facial sense. Really, they go to

whether some *other* law prohibits the court from applying § 1B1.13(b)(6) to a case like this one,

where the gross disparity is related to an amendment to a statutory sentencing range. Even if the

government were correct, this would not invalidate § 1B1.13(b)(6). But also, the government is

mistaken.

First, the government suggests that the First Step Act itself prohibits application of the

new § 1B1.13(b)(6) to cases involving gross disparities related to FSA amendments—relevant

here, FSA § 401. (R.654, PageID# 7806.) But the Act says nothing about retroactivity. To be

sure, § 401's applicability statement provides that the amendment is effective as of its enactment

date. § 401(c). Patterson, however, is not claiming that § 401 applies to his case—if he were, he

would not be filing a § 3582(c)(1)(A) motion. Nor is he claiming that, under § 1B1.13(b)(6), a

court could declare any legal change (standing alone) to be an "extraordinary and compelling"

reason to reduce a sentence. And nothing in § 401 touches on a court's ability to consider the impact of § 401 on individuals to whom it does not apply—in the context of a discretionary sentence-reduction motion or anything else (*e.g.,* original sentencing proceeding in another case, revocation proceeding).

The government also evokes the general federal saving statute, 1 U.S.C. § 109, but § 109 is irrelevant. (R.654, PageID# 7798.) Section 109 has been interpreted to provide that an ameliorative penalty statute does not abate sentences for offenses committed prior to the statute's enactment, unless the statute indicates otherwise. *See Dorsey v. United States*, 567 U.S. 260, 273–75 (2012). In other words, an ameliorative statute does not automatically apply to sentences already imposed. But the new § 1B1.13(b)(6) does not permit courts to apply an ameliorative statute to a sentence already imposed. Again, it does not even declare that an ameliorative statute—or any other legal change—can, on its own, amount to an extraordinary and compelling basis for sentencing relief. It just permits certain kinds of changes to factor into a larger discretionary analysis. And the saving statute says nothing at all about whether a court may find that individualized circumstances relating to an unusually long sentence, when combined with the fact that a legal change resulted in a gross disparity impacting the case, present an extraordinary and compelling reason to reduce the sentence.

Finally, the government contends that § 1B1.13(b)(6) is in "tension" with separation-of-powers principles—at least, as applied to a case like this one, which relates in part to a statutory sentencing change. (R.654, PageID# 7804.) But Congress enacted § 3582(c)(1)(A) and the President signed it into law. So, reducing a lawful sentence as permitted by § 3582(c)(1)(A) cannot violate separation-of-powers principles any more than reducing a sentence as permitted by Rule 35 or the former § 4205, or any other duly enacted sentence-reduction statute. Really,

24

the government's separation-of-powers argument is just a rehash of its argument that one statute, FSA § 401, forbids courts from even considering the impact of that statute when applying another statute, § 3582(c)(1)(A), to a case like this one. Two paragraphs ago, this brief explained that § 401 does no such thing. Thus, just as there is no conflict between § 401(c) and § 1B1.13(b)(6), there is also no separation-of-powers problem.

### 5. Summation

As the government concedes, § 1B1.13 has the binding force of law. And, as just explained, subsection (b)(6) is valid. The Court should apply it and find Patterson eligible for relief under it. Indeed, the government implicitly concedes Patterson is eligible under the terms of § 1B1.13(b)(6). Not only is his sentence grossly disproportionate to the one he would receive today, but his sentence is the harshest possible non-capital punishment, and he has served as a model inmate for more than a decade. His circumstances warrant a reduction.

## III. The § 3553(a) factors support a sentence of time served.

Patterson has set forth a detailed rationale for a reduction to time served in light of all the changes that the Court is certainly entitled to consider in the exercise of its discretion under § 3553(a). *See Concepcion*, 142 S. Ct. at 2402. In response, the government acknowledges that Patterson's mandatory minimum for the drug offense would be just 10 years today, not life, followed by a mandatory 5 years for the § 924(c) offense from the 2009 charge. (R.654, PageID# 7808, 7812.) And, notably, the government stops short of claiming that a life sentence is necessary to satisfy the § 3553(a) factors.

The government does harp on the harmful aspects of Patterson's criminal activity, but nonviolent drug dealing does not mandate a life sentence. Certainly, the conduct of Bassim Fardos and Robert Bell was far worse than Patterson's, and John Banks's conduct was very

similar, yet the government agreed to much shorter sentences in their cases. Indeed, the government agreed to a far shorter sentence for Patterson himself—perhaps as short as 17 years—that belies the argument that § 3553(a) factors require him to remain in prison longer. Factoring in good-time credits, he has already served a federal sentence of 17.4 years. And his extremely impressive performance for all those years in prison is a very good reason to conclude that even the 17-year plea bargain offered prior to his rehabilitation was too harsh. Patterson has shown he can turn his life around and that he deserves a second chance where he can prove himself to his family.

## Conclusion

Adrian Patterson respectfully asks that the Court find sufficient reason to reduce his life sentence under 18 U.S.C. § 3582(c)(1), and that the Court reduce that sentence time served or to the term the Court deems appropriate.

Respectfully submitted,

s/ *Michael C. Holley*
MICHAEL C. HOLLEY
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, Tennessee 37203
615-736-5047

Counsel for Patrick Patterson

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2023, I electronically filed this pleading with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to Monica Morrison, Assistant United States Attorney, Office of the U.S. Attorney, 719 Church Street, Suite 3300, Nashville, Tennessee, 37203.

s/ *Michael C. Holley*
MICHAEL C. HOLLEY